FILED
COURT OF APPEALS
DIVISION II

2014 MAR 25 AM 8: 49

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43582-9-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| LAVESTER A. JOHNSON, | |
| Appellant. | |

BJORGEN, J. — A jury found Lavester A. Johnson guilty of third degree child molestation. Johnson appeals his conviction and sentence, alleging that (1) the trial court violated his and the public's right to a public trial by sealing the juror questionnaires without complying with necessary procedures and (2) his trial attorney provided ineffective assistance of counsel by failing to subpoena two witnesses. Alternatively, Johnson asks that we remand his case to the trial court with orders to clarify one community custody condition, strike another, and correct certain statutory citation errors in an appendix to his judgment and sentence. Rejecting Johnson's public trial and ineffective assistance of counsel claims, we affirm his convictions. However, we remand to the trial court to strike or clarify community custody condition 16, to strike community custody condition 25, and to correct clerical errors.

## FACTS

In early spring 2011, 14-year-old CP[1] and her aunt spent the night at the home of Tina Becerra, a family friend. CP testified that Johnson, Becerra's boyfriend, touched her inappropriately on three different occasions during the night and the following morning.

---

[1] We use initials to protect the privacy interests of sex crime victims.

The State charged Johnson with third degree child molestation and the case proceeded to trial. To assist in jury selection, the parties used a two-page questionnaire the jurors filled out before oral voir dire.

At trial CP testified about the molestation. Johnson testified in his own defense, as did Becerra and another adult present throughout CP's visit. Johnson's cousin and Becerra's six-year-old daughter, who were both at Becerra's house during CP's molestation, did not testify.

The jury returned a guilty verdict. The trial court sentenced Johnson to 14 months' confinement and 36 months of community custody, imposing several conditions as part of his community custody. One of these conditions prohibited Johnson from contact with "physically or mentally vulnerable" individuals. Clerk's Papers (CP) at 112. Another prohibited computer or Internet access without the permission of the court; this condition also forbad Johnson from using Internet social media sites. In addition, the part of Johnson's judgment and sentence containing these conditions, Appendix H, stated that the trial court had sentenced Johnson under former RCW 9.94A.712 (2006) and referenced former RCW 9.94A.150 (2000) and former RCW 9.94A.125 (1983), all of which had been recodified to other RCW sections.

Johnson timely appeals his conviction and sentence.

ANALYSIS

I. PUBLIC TRIAL

Johnson contends that the trial court abridged both his right to a public trial and the public's right to open access to judicial proceedings by sealing the juror questionnaires without performing the analysis required by *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). We find no evidence that the trial court sealed the questionnaires and reject Johnson's claim.

2

No. 43582-9-II

The Washington and federal constitutions protect a criminal defendant's right to a public trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Both constitutions also protect the public's right to open judicial proceedings. *Press-Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 509 n.8, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984), WASH. CONST. art. I, § 10; *State v. Easterling*, 157 Wn.2d 167, 174, 137 P.3d 825 (2006). The right to a public trial requires that jury selection occur in public. *State v. Momah*, 167 Wn.2d 140, 148, 217 P.3d 321 (2009); *Press-Enter.*, 464 U.S. at 505-13.

To succeed on a public trial claim, a defendant must first show "the courtroom was actually closed." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 27, 296 P.3d 872 (2013). Even if we assume that sealing the questionnaires would constitute a courtroom closure, we cannot grant Johnson relief without a showing that the trial court did, in fact, seal the questionnaires. *See Yates*, 177 Wn.2d at 27.

Johnson fails to make this showing. The record contains no trial court order sealing the completed juror questionnaires or stipulations by the parties agreeing to a sealing. *See, e.g., State v. Beskurt*, 176 Wn.2d 441, 444, 293 P.3d 1159 (2013) (lead opinion by Johnson, J.); *State v. Smith*, 162 Wn. App. 833, 840-41, 262 P.3d 72 (2011). The questionnaire itself contains no language promising the jurors that the court would seal the completed questionnaires. In fact, the trial court confirmed that language in prior questionnaires that guaranteed nondisclosure had been removed. *See, e.g., Smith*, 162 Wn. App. at 840-41. Johnson did not have voir dire transcribed, so we lack a record of any oral discussion indicating that the trial court intended to seal the questionnaires. *See Beskurt*, 176 Wn.2d at 443-44. In short, the evidence in the record is insufficient to establish a court closure.

3

Johnson contends that the juror questionnaire template filed with the court shows that the questionnaires were sealed. The template, however, shows only that the parties filed it in open court on April 10, 2012. No part of the template shows that the trial court sealed it, let alone the completed questionnaires at issue in Johnson's trial.

Johnson alleges also that all juror questionnaires are sealed as a matter of course in Pierce County. However, nothing in the record supports this bare allegation. On direct appeal the scope of our review is limited to matters in the trial record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Consequently, to raise this issue Johnson must present evidence supporting the allegation in a collateral proceeding and seek relief through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his statement of additional grounds, Johnson contends that he received ineffective assistance of counsel because his attorney failed to subpoena his cousin and Becerra's six-year-old daughter, both of whom were at Becerra's house when Johnson molested CP. We disagree.

Both the state and federal constitutions protect a defendant's right to effective assistance of counsel in criminal trials. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *remanded*, 168 Wn. App. 635, 278 P.3d 225 (2012). To prevail on his ineffective assistance of counsel claim, Johnson must show both that his attorney's performance was deficient and that this deficiency prejudiced him. *Grier*, 171 Wn.2d at 32-33 (citing *State v. Thomas*, 109 Wn.2d. 222, 225-26, 743 P.2d 816 (1987)). Demonstrating prejudice requires Johnson to show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166

4

Wn.2d 856, 862, 215 P.3d 177 (2009)). We may resolve an ineffective assistance of counsel claim on either the deficient performance or prejudice prong. *Grier*, 171 Wn.2d at 33 (citing *Thomas*, 109 Wn.2d at 225-26).

Johnson provides no evidence as to the testimony his cousin or Becerra's daughter would have offered if called to the stand at his trial. Without knowing what these witnesses would testify to, we cannot say the outcome of the trial would have differed had they testified. *State v. Johnson*, 132 Wn. App. 400, 414, 132 P.3d 737 (2006); *State v. Stovall*, 115 Wn. App. 650, 659-60, 63 P.3d 192 (2003). Johnson does not establish prejudice, and his ineffective assistance of counsel claim therefore fails.

### III. COMMUNITY CUSTODY CONDITIONS

Johnson next challenges two of the conditions imposed by the trial court as part of his sentence. He first challenges condition 16, which states, "Do not initiate, or have in any way, physical contact with children under the age of 18 for any reason. Do not have any contact with physically or mentally vulnerable individuals." CP at 112. Johnson contends that the use of "vulnerable" in this condition is unconstitutionally vague. CP at 112. Johnson also challenges condition 25, which provides, "You shall not have access to the Internet at any location nor shall you have access to computers unless otherwise approved by the Court. You also are prohibited from joining or perusing any public social websites (Face[]book, MySpace, etc.)." CP at 113. Johnson argues the trial court lacked statutory authority to impose this condition as it is unrelated to the facts of his crime. We agree with both contentions.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, authorizes the trial court to impose "crime-related prohibitions and affirmative conditions" as part of a sentence. RCW

9.94A.505(8); *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Any condition imposed in excess of this statutory grant of power is void. *State v. Paulson*, 131 Wn. App. 579, 588, 128 P.3d 133 (2006). We review de novo whether the trial court had statutory authorization to impose a community custody condition. *State v. Acevedo*, 159 Wn. App. 221, 231, 248 P.3d 526 (2010). If the trial court had statutory authorization, we review its decision to do so for an abuse of discretion. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010) (quoting *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)).

A.    Vagueness and Condition 16

The guarantee of due process of law found in both the state and federal constitutions "requires that citizens have fair warning of proscribed conduct." *Bahl*, 164 Wn.2d at 752. A community custody condition does not satisfy this requirement if it fails to define the forbidden conduct "'with sufficient definiteness that ordinary people can understand what conduct is proscribed'" or "'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). The imposition of an unconstitutionally vague condition is an abuse of the trial court's discretion. *Valencia*, 169 Wn.2d at 792.

The Supreme Court's recent opinion in *Valencia* is instructive in dealing with Johnson's vagueness challenge. The trial court in *Valencia* had imposed a condition prohibiting the defendant from possessing "paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances." 169 Wn.2d at 785 (internal quotation marks omitted). On review, the Supreme

6

Court found that this condition failed both of the prongs used to test for vagueness. *Valencia*, 169 Wn.2d at 793-95.

The court first determined that this condition failed to provide adequate notice of proscribed behavior. The court allowed that the term "paraphernalia" was commonly associated with the materials employed for using or selling drugs. *Valencia*, 169 Wn.2d at 794. However, the court noted that "nothing in the condition as written" limited its application to those types of materials. *Valencia*, 169 Wn.2d at 794. Given the broad definition of materials encompassed by the word "paraphernalia," which included "'personal belongings'" or "'articles of equipment,'" the court held that the condition did not provide reasonable notice as to what the defendants could or could not possess. *Valencia*, 169 Wn.2d at 794 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1638 (2002)).

The court also determined that the condition violated the second prong of the vagueness test because of the "wide range" of items encompassed by "paraphernalia" and the consequent discretion this gave probation officers in finding that a violation of the condition had occurred. *Valencia*, 169 Wn.2d at 794-95. The court reasoned that because of the breadth of items covered by the term, "an inventive probation officer" could use possession of an everyday item to arrest the defendant for a violation while another probation officer might adhere more to the intent of the condition and not arrest the defendant for possessing an everyday item not connected to drug use or sales. *Valencia*, 169 Wn.2d at 794-95 (internal quotation marks omitted). The court held that "[a] condition that leaves so much to the discretion of individual community corrections officers is unconstitutionally vague." *Valencia*, 169 Wn.2d at 795.

7

Regardless of whether condition 16 fails to provide adequate notice of proscribed conduct to Johnson, we hold that the use of the term "vulnerable" fails to provide the safeguards against arbitrary enforcement required by due process. We test whether a condition guards against arbitrary enforcement by looking to whether it "proscribes conduct by resort to 'inherently subjective terms.'" *Douglass*, 115 Wn.2d at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984)). Subjective terms allow a "'standardless sweep'" that enables state officials to "'pursue their personal predilections'" in enforcing the community custody conditions. *Douglass*, 115 Wn.2d at 180 n.6 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983))

Under *Douglass*, condition 16's use of "vulnerable" is inherently subjective. 115 Wn.2d at 794. While the State argues that the term, in context, is confined to those the legislature has designated for extra protection from sexual assault or misconduct, "nothing in the condition as written" requires this reading. *Valencia*, 169 Wn.2d at 794. "Vulnerable" means "capable of being wounded: defenseless against injury" or "open to attack or damage: readily countered: inviting obvious retort, ridicule, or obloquy." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2567 (1969). With these definitions of "vulnerable," the breadth of condition 16 is startling. Given its text, one probation officer might enforce the provision as the State understands it and only find a violation if Johnson contacts a minor, or a person with a physical or mental handicap, or a frail, elderly person. A more "inventive probation officer," however, might deem Johnson to violate his community custody for contacting a person with slow reflexes, a person with a weak constitution, a person with hemophilia, a person who is gullible, a person who is emotionally thin-skinned or possessed of a fragile psyche, or a person having a

8

bad week. *Valencia*, 169 Wn.2d at 794 (internal quotation marks omitted). Each of those individuals is mentally or physically "open to attack or damage," "capable of being wounded," or "inviting obvious . . . ridicule" in a way exceeding the norm. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2567 (1969). The fact that two officers might enforce the condition in fealty to its terms in such drastically different ways offends the most important protection offered by the vagueness doctrine. *See Valencia*, 169 Wn.2d at 794-95; *Kolender*, 461 U.S. at 357-58.

Finding the term "vulnerable" to be vague also comports with Division One's opinion in *State v. Moultrie*, 143 Wn. App. 387, 177 P.3d 776 (2008), to which Johnson analogizes his case. In *Moultrie* the trial court had imposed an order forbidding the defendant from contacting "vulnerable, ill or disabled adults." *Moultrie*, 143 Wn. App. at 396 (internal quotations marks omitted). The defendant challenged the term "vulnerable" as vague and overbroad. *Moultrie*, 143 Wn. App. at 396-98. The State defended its use similarly to the way it has here, by arguing that statutory authority gave meaning to the term. *Moultrie*, 143 Wn. App. at 397. The *Moultrie* court rejected this argument, noting that "there is no indication that the trial court in fact intended to limit the terms of the order to" the statutory meanings, and therefore refused to read those meanings into the order. *Moultrie*, 143 Wn. App. at 397-98. The court remanded the case to the trial court to clarify the meaning of "vulnerable." *Moultrie*, 143 Wn. App. at 398. Based on *Moultrie*, Johnson asks us to remand his case to the trial court to allow it to clarify the term.

The State argues that *Moultrie* does not support Johnson's request for two reasons. First, the State claims that the *Moultrie* court did not find "vulnerable" to be "unconstitutionally vague or overbroad." Br. of Resp't at 11. The vagueness and overbreadth doctrines, however, do not

9

occupy identical conceptual territory. While the *Moultrie* court did determine that the term "vulnerable" was not overbroad, this hinged in large part on the First Amendment underpinnings of the overbreadth doctrine and on the trial court's ability to curtail First Amendment rights as part of sentencing. *Moultrie,* 143 Wn. App. at 398-99. The court *did* consider the term "vulnerable" to be vague or there would have been no reason to remand to allow the trial court to clarify the term. Second, the State maintains that *Moultrie* does not require remand for resentencing. As discussed below, Johnson's case requires remand due to the error related to condition 25. On remand, we order the trial court to either clarify the meaning of "vulnerable" in condition 16 consistently with this opinion or to strike the portion of condition 16 stating, "Do not have any contact with physically or mentally vulnerable individuals." CP at 112.

B.      The Nexus Between Condition 25 and the Facts of Johnson's Crime

Johnson also challenges the validity of community custody condition 25. Johnson contends that the court lacked the authority to impose this condition without first finding that computer use, Internet access, or social networking web site use contributed in some way to his offense. The State concedes this argument and asks that we remand the matter to the trial court so that it may strike the condition. The State's concession is well offered and we accept it.

While RCW 9.94A.505(8) allows the trial court to "impose and enforce crime-related prohibitions and affirmative conditions" as part of a criminal sentence, that authority is circumscribed. By the terms of RCW 9.94A.030(10), a "crime related prohibition" must "directly relate[] to the circumstances of the crime for which the offender has been convicted."

Division One of this court has already held that a sentencing court may not prohibit a defendant from using the Internet if his or her crime lacks a nexus to Internet use. In *State v.*

10

*O'Cain*, the trial court ordered an offender convicted of second degree rape to refrain from using the Internet without the prior approval of his community custody officer. 144 Wn. App. 772, 774, 184 P.3d 1262 (2008). On appeal, Division One noted that no evidence in the record suggested that the defendant used the Internet to commit his crime or that his Internet use had contributed to the crime in any other way. *O'Cain*, 144 Wn. App. at 775. Because of this absence of evidence, the trial court had not made any findings concerning a nexus between Internet use and O'Cain's crime. *O'Cain*, 144 Wn. App. at 775. The *O'Cain* court remanded the case to the trial court with orders to strike the condition based on the lack of the requisite nexus between the crime and the prohibited activity. *O'Cain*, 144 Wn. App. at 775.

Just as in *O'Cain*, there are no findings suggesting any nexus between Johnson's offense and any computer use or Internet use. The trial court exceeded its sentencing powers under RCW 9.94A.505(8) in imposing the condition. Following *O'Cain*, we remand Johnson's case to the trial court with instructions to strike community custody condition 25. 144 Wn. App. at 775.

## IV. JUDGMENT AND SENTENCE ERRORS

Finally, Johnson claims that the trial court erred with several statutory citations found in appendix H to his judgment and sentence. The State concedes that the statutory citations in the appendix are erroneous and asks that we remand the matter to the trial court to allow it to correct the errors. Again, the State's concession is well offered, and we accept it.

Appendix H of Johnson's judgment and sentence contains numerous references to code provisions no longer in effect at the time Johnson committed his crime. Most importantly, the trial court ostensibly sentenced Johnson under RCW 9.94A.712. However, by 2011 the code reviser had recodified former RCW 9.94A.712 as RCW 9.94A.507. Similarly, appendix H

No. 43582-9-II

contains references to former RCW 9.94A.150 and RCW 9.94A.125, which had been recodified to RCW 9.94A.728 and RCW 9.94A.825, respectively, before Johnson violated RCW 9A.44.089.

CrR 7.8(a) allows a trial court to fix clerical errors in judgments "at any time." RAP 7.2(e)(1) limits this authority once we have taken review of a case:  the trial court may not act without our permission.  We remand the matter with the necessary permission so that the trial court may correct the statutory references in appendix H. *State v. Moten*, 95 Wn. App. 927, 929, 976 P.2d 1286 (1999); *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 700-02, 117 P.3d 353 (2005).[2]

## CONCLUSION

We affirm Johnson's conviction, but remand to the trial court to strike or clarify community custody condition 16 consistently with this opinion, to strike condition 25, and to correct the statutory citation errors in appendix H to the judgment and sentence.

_____
BJORGEN, J.

We concur:

_____
WORSWICK, C.J.

_____
JOHANSON, A.C.J.

---

[2]The State argues that, on remand, the trial court should correct the judgment and sentence to reflect that Johnson was sentenced under RCW 9.94A.507. Johnson contends that this is erroneous and the judgment and sentence should reflect that he was sentenced under RCW 9.94A.505. Johnson appears correct. *See* RCW 9.94A.507(1), (2). Despite the incorrect citation, Johnson does not allege that he received an improper sentence.

12