# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 47169-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| FREDERICK MITCHELL DETWILER | |
| Appellant. | |

MAXA, J. – Frederick Detwiler appeals the trial court's revocation of his Special Sex Offender Sentencing Alternative (SSOSA), which was based on his consumption of marijuana in violation of sentencing conditions. Detwiler argues that the trial court erred in revoking his SSOSA because it had no statutory authority to impose conditions prohibiting marijuana consumption and that those conditions were vague when considered together with other conditions allowing the consumption of controlled substances with a prescription. In a statement of additional grounds (SAG), Detwiler argues that the trial court erred in revoking his SSOSA based on his marijuana use.

We hold that (1) the trial court had statutory authority to impose sentencing conditions prohibiting Detwiler from consuming marijuana because such conditions related to behaviors or activities that were precursors to his crime and were crime related, (2) Detwiler's sentencing conditions are not unconstitutionally vague, and (3) the trial court did not abuse its discretion in revoking Detwiler's SSOSA based on his stipulated violation of sentencing conditions.

Therefore, we affirm the trial court's order revoking Detwiler's SSOSA and re-imposing his

suspended sentence.

FACTS

Between July 2007 and August 2008, when he was 18 and 19 years old, Detwiler

engaged in sexual intercourse with a minor. The victim reported the abuse in August 2013.

Detwiler admitted that when he was drunk he had touched the victim inappropriately.

In June 2014, Detwiler pleaded guilty to one count of first degree child rape. Detwiler

and the State jointly requested that the trial court impose a SSOSA sentence.

*Comte Evaluation*

As part of the SSOSA evaluation process, Detwiler underwent a psychosexual evaluation

and treatment plan prepared by Michael Comte. Detwiler told Comte that he had smoked

marijuana daily from when he was 15 years old until the time of his arrest.

Comte informed Detwiler that if the court ordered a SSOSA he likely would be

prohibited from consuming alcohol and marijuana, and Detwiler stated that he was fine with that.

Comte's report stated that abstinence would be a key to controlling his sexual impulses. Comte

concluded that a SSOSA might be a workable disposition if six specific recommendations were

implemented. One of the recommendations was that Detwiler be prohibited from consuming

alcohol and other mind-altering substances, including marijuana.

*Pre-Sentence Report*

The Department of Corrections (DOC) conducted a pre-sentence investigation. Detwiler

told DOC that he was intoxicated when he had intercourse with the victim, and attributed his

crime to being intoxicated. He also again stated that he had used marijuana daily from when he

was 15. DOC determined that one of the factors contributing to Detwiler's risk to reoffend was his chemical dependency. DOC did not support a SSOSA because of Detwiler's moderate to high risk of reoffending.

*Conditions of SSOSA Sentence*

The trial court sentenced Detwiler to a SSOSA. The trial court imposed an indeterminate sentence of 131.9 months to life, suspending all but 12 months of the sentence and imposing a life term of community custody. The trial court also required Detwiler to attend outpatient sex offender treatment for at least three years. The judgment and sentence stated in two places that conditions of his sentence were set forth in appendices F and G. The judgment and sentence also included appendix H, which stated the conditions of community custody. Appendices F, G and H were attached to the judgment and sentence.

The judgment and sentence incorporated several sentencing conditions regarding the consumption of controlled substances and marijuana. Appendix F contained general sentencing conditions. One condition stated, "The offender shall not consume controlled substances except pursuant to lawfully issued prescriptions." Clerk's Papers (CP) at 30.

Appendix G contained SSOSA sentencing conditions. One condition stated, "The defendant shall not consume controlled substances except pursuant to lawfully issued prescriptions." CP at 31. Another condition stated that Detwiler must "[c]omply with all treatment provider and [community corrections officer] conditions [and] requirements." CP at 31. A third condition stated, "The treatment program shall include the requirements/conditions set forth in Michael A. Comte's evaluation on pages 13-14 [and] attached hereto." CP at 31. One requirement on the attached page 13 was that "Mr. Detwiler should be prohibited from

possessing and consuming alcohol and mind-altering substances, *including marijuana*. Random

urinalysis and polygraph examination should verify compliance." CP at 32 (emphasis added).

Appendix H stated the conditions with which Detwiler was required to comply during the

term of community custody. One mandatory condition stated that Detwiler could not "consume

controlled substances or alcohol, except pursuant to lawfully issued prescriptions." CP at 35.

Other community custody conditions included:

13. You shall not possess or consume any controlled substances without a valid prescription from a licensed physician.

14. Do not purchase, possess, or consume alcohol or *marijuana*.

CP at 35 (emphasis added).

At sentencing, the trial court noted that Detwiler had to accept responsibility for the fact

that under the SSOSA, he would not be able to consume alcohol or drugs at all. The trial court

also stated that Detwiler would have to follow all conditions of his treatment provider, and

referenced Comte's treatment plan set forth in pages 13 and 14 of Comte's evaluation. Detwiler

signed at the bottom of Comte's treatment plan, which included the prohibition against

consuming marijuana. Finally, the trial court expressly told Detwiler, "You are not to possess or

consume alcohol or any illegal substances[,] including marijuana." Report of Proceedings (RP)

(Aug. 15, 2014) at 32-33.

*Revocation of SSOSA*

After serving 12 months in prison, Detwiler was released from confinement on October

10, 2014. Before he was released, DOC reviewed Detwiler's sentence with him and he initialed

a document stating that he had received a copy of the judgment and sentence and understood all

its requirements. As noted above, both appendix G and appendix H were attached to the

4

judgment and sentence. A condition in appendix G incorporated Comte's recommendation that Detwiler be prohibited from consuming marijuana, and appendix H included a community custody condition prohibiting the consumption of marijuana.

On November 26, Detwiler asked his community corrections officer (CCO) whether he could smoke marijuana if he obtained medical authorization. The CCO said that he was almost certain that Detwiler's conditions prohibited consumption of marijuana, and told Detwiler not to smoke marijuana until he clarified the conditions. Later that day Detwiler left a message with the CCO stating that he could not find any prohibition against using medical marijuana in his sentencing conditions.

At a meeting on December 2, the CCO showed Detwiler the condition in appendix H to the judgment and sentence prohibiting the consumption of marijuana. Detwiler then admitted to smoking marijuana on the previous day. He later signed a drug use confession form stating that he had smoked marijuana on December 1 and December 2. The State filed a notice of violation based on this admission. The notice stated that Detwiler had failed to abide by court conditions and had failed to abide by a CCO directive by consuming marijuana.

At the violation hearing, Detwiler stipulated to the alleged violations. He testified that he had obtained medical authorization to use marijuana and had used the marijuana as an alternative to pain medication. He also testified that he had reviewed his sentencing conditions and saw the prohibition against using controlled substances without a lawfully issued prescription, but did not see the condition in appendix H prohibiting consumption of marijuana.

The trial court accepted Detwiler's stipulation that he had violated the sentencing conditions prohibiting the consumption of marijuana. The trial court stated:

It was very clear in Appendix H, and in this Court incorporating in Mr. Comte's recommendations specifically to the Judgment and Sentence that you were not to consume marijuana. While there may have been a conflict in your mind about obtaining some document that seemed to give you permission to do so, it is clear that, first off, "Mr. Detwiler should be prohibited from possessing and consuming alcohol and mind-altering substances, including marijuana." Whether it was legal or not, you were prohibited, and random urinalysis would follow that to verify your compliance.

[A]t the time I went over the conditions of the Judgment and Sentence and Appendix H, it was very clear, no marijuana. That was reiterated in the Appendix H. It was reiterated in Mr. Comte's recommendations. It was reiterated in the rules that DOC set out for you after you were released.

RP (Jan. 16, 2015) at 35-36 (quoting CP at 64). As a result, the trial court found that Detwiler was not amenable to treatment, revoked Detwiler's SSOSA, and imposed a 131.9 month to life indeterminate sentence.

Detwiler appeals the revocation of his SSOSA.

ANALYSIS

A.      AUTHORITY TO PROHIBIT MARIJUANA CONSUMPTION

Detwiler argues that the sentencing court lacked statutory authority to impose sentencing conditions prohibiting him from consuming marijuana, and therefore that the sentencing court erred in revoking his SSOSA based on his violation of those conditions. We disagree.

1.   Legal Principles

RCW 9.94A.670 authorizes a sentencing court to impose a SSOSA if the offender is eligible under RCW 9.94A.670(2) and based on considerations identified in RCW 9.94A.670(4). Once the sentencing court determines that a SSOSA is appropriate, it imposes a standard range sentence or an indeterminate sentence within the standard range and then may suspend execution of the sentence under certain conditions. RCW 9.94A.670(4), (5).

Before imposing a SSOSA on an eligible offender, the sentencing court may order an evaluation to determine if the offender is amenable to treatment. RCW 9.94A.670(3). The evaluator's report must include recommended crime-related prohibitions and affirmative conditions, including "identification of specific activities or behaviors that are precursors to the offender's offense cycle." RCW 9.94A.670(3)(b)(v). Such activities or behaviors may include use of controlled substances. RCW 9.94A.670(3)(b)(v).

In conjunction with imposing a SSOSA, a sentencing court has authority to impose three types of sentencing conditions. First, the sentencing court must impose "[s]pecific prohibitions and affirmative conditions relating to the known precursor activities or behaviors identified in the proposed treatment plan." RCW 9.94A.670(5)(d). Second, the sentencing court may impose several other specified conditions, including "[c]rime-related prohibitions." RCW 9.94A.670(6)(a). Third, the sentencing court must require the offender to comply with any community custody conditions imposed under RCW 9.94A.703. RCW 9.94A.670(5)(b). One authorized community custody condition is that the offender comply with any crime-related prohibitions. RCW 9.94A.703(3)(f).

Under RCW 9.94A.670(11), a sentencing court can revoke the SSOSA suspended sentence at any time during the period of community custody if the offender violates the conditions of the suspended sentence. If the offender violates a sentencing condition that is not a condition of the suspended sentence pursuant to RCW 9.94A.670(5) and (6), DOC may only impose sanctions against the offender. RCW 9.94A.670(12).

A sentencing court may only impose community custody conditions the legislature has authorized. *State v. Warnock*, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013). We review de

7

novo whether the sentencing court acted with statutory authority. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014).

###### 2. Precursor Activities or Behaviors

As part of a SSOSA sentence, a sentencing court must impose "[s]pecific prohibitions and affirmative conditions relating to the known precursor activities or behaviors identified in the proposed treatment plan." RCW 9.94A.670(5)(d). Detwiler argues that Comte did not identify marijuana use as a precursor activity or behavior to the crime of first degree child rape, and therefore the trial court did not have authority under RCW 9.94A.670(5)(d) to require Detwiler to comply with Comte's condition that Detwiler not consume marijuana. We disagree.

Comte did not expressly state that marijuana use was a precursor activity or behavior to Detwiler's crime. But Comte's report noted that Detwiler was smoking marijuana daily during the period that he committed the crime. Therefore, it can be inferred that Detwiler's marijuana consumption played a role in his offense. And Comte specifically concluded that abstinence from alcohol, marijuana and other drugs was a key to controlling Detwiler's sexual impulses. That conclusion formed the basis for his treatment plan requirement that Detwiler be prohibited from consuming marijuana.

Based on Comte's report, consumption of alcohol, marijuana and other drugs was a precursor activity or behavior to the crime for which he was convicted. Accordingly, we hold that the trial court had authorization under RCW 9.94A.670(5)(d) to require Detwiler to comply with Comte's requirement that Detwiler not consume marijuana.

3.    Crime-Related Prohibition

Detwiler also argues that the trial court had no authority to impose the community custody condition prohibiting marijuana consumption because it was not a crime-related condition.  We disagree.

Both RCW 9.94A.670(6)(a) and RCW 9.94A.703(3)(f) authorize crime-related conditions.  A "crime-related prohibition" is an order "prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted."  RCW 9.94A.030(10).  A prohibition designed to prevent the offender from committing in the future the type of crime for which he was convicted can be crime-related.  *See State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993).

We review a trial court's imposition of crime-related prohibitions for abuse of discretion. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).  A trial court abuses its discretion with regard to a sentencing condition if its decision is manifestly unreasonable or based on untenable grounds.  *State v. Corbett*, 158 Wn. App. 576, 597, 242 P.3d 52 (2010).  Generally, we uphold crime-related prohibitions if they are reasonably related to the crime.  *Warren*, 165 Wn.2d at 32.

As noted above, Comte's report supports the conclusion that Detwiler's marijuana use was related to his crime.  Comte stated that Detwiler had been using marijuana daily for several years when he committed the crime of first degree child rape, and that marijuana use interfered with his ability to control his sexual impulses.  And the pre-sentence investigative report identifies Detwiler's substance abuse as a contributing factor to his crime.  Detwiler admitted that he was intoxicated when he committed the charged child rape and that when he is intoxicated he does things he normally would not do.

The record reflects that Detwiler's use of marijuana was related to his offense. Accordingly, we hold that the trial court did not abuse its discretion in imposing a community custody condition that prohibited Detwiler from consuming marijuana.[1]

B.      VAGUENESS – CONTRADICTORY CONDITIONS

Detwiler argues that even if the trial court had authority to impose a sentencing condition prohibiting all consumption of marijuana, considered as a whole the multiple sentencing conditions addressing controlled substances and marijuana are unconstitutionally vague because they contradict each other. Therefore, he argues that the condition prohibiting the consumption of marijuana is unenforceable and that the trial court erred in revoking his SSOSA based on that condition. We disagree.

1.      Legal Principles

The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution require fair warning of proscribed conduct. This ensures that ordinary people can understand what is and is not allowed, and it protects them from arbitrary enforcement of the laws. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010).

A sentencing condition is unconstitutionally vague if it (1) fails to define the offense with sufficient definiteness so that ordinary people can understand the scope of prohibited conduct, or (2) fails to provide " 'ascertainable standards of guilt' " to protect against arbitrary enforcement. *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). Similarly, a condition that allows the

---

[1] Because we find no abuse of discretion, we do not address the State's alternative claim that Detwiler waived this challenge by pleading guilty.

CCO discretion to determine if the supervised person violated his community custody conditions is unconstitutionally vague. *Sanchez Valencia*, 169 Wn.2d at 795. And unlike statutes challenged on vagueness grounds, there is no presumption of validity for sentencing conditions. *Id.* at 792-93.

Imposing community custody conditions generally is within the trial court's discretion, and a condition will be reversed only if it is manifestly unreasonable. *Bahl*, 164 Wn.2d at 753. However, the imposition of an unconstitutionally vague condition is manifestly unreasonable. *Sanchez Valencia*, 169 Wn.2d at 793.

2. Sufficient Definitiveness

Detwiler focuses on the sentencing conditions that allowed him to use controlled substances with a lawfully issued prescription. Although the possession of small amounts of marijuana has now been decriminalized in Washington, marijuana is a schedule I controlled substance under federal law. 21 U.S.C. § 812(c)(17). RCW 69.50.101(d) defines a "[c]ontrolled substance" as a substance included in schedule I under federal law. Therefore, marijuana remains a "controlled substance" under Washington law.

Detwiler claims that he had a lawfully issued prescription for the medical use of marijuana. But Washington medical marijuana statutes only allow a health care professional to issue "valid documentation" authorizing the medical use of marijuana. RCW 69.51A.030(2)(a). The term "[v]alid documentation" means a statement that the patient may benefit from the medical use of marijuana. RCW 69.51A.010(7)(a). Nothing in the medical marijuana statutes allow a health care professional to write a *prescription* for marijuana. And a person cannot obtain a prescription for a schedule I substance like marijuana. *See* RCW 69.50.308.

11

Because a person cannot obtain a *prescription* for marijuana, the sentencing conditions allowing use of controlled substances with a lawfully issued prescription do not apply to marijuana. Therefore, those conditions do not contradict separate conditions prohibiting all use of marijuana.

Arguably, the multiple controlled substances conditions could be confusing as applied to marijuana in some cases. A sentencing condition is not sufficiently definite if a person of ordinary intelligence cannot understand what the condition proscribes. *Bahl*, 164 Wn.2d at 754. A person of ordinary intelligence may reasonably confuse a medical marijuana "authorization" with a "prescription."

Here, however, the record negates any such confusion. Comte recommended that Detwiler be prohibited from consuming marijuana, and that requirement was incorporated as a sentencing condition. And the trial court made it clear at sentencing that Detwiler was prohibited from consuming marijuana. Finally, the condition prohibiting marijuana consumption immediately followed the controlled substances condition in Appendix H. A reasonable interpretation of these consecutive conditions is that the controlled substances condition addresses substances other than marijuana for which a lawfully issued prescription could be acquired, while the absolute prohibition related to marijuana.

Because a lawfully issued prescription cannot be issued for marijuana, the conditions allowing consumption of controlled substances with a prescription do not contradict the conditions prohibiting all use of marijuana. And the record shows that the trial court intended to prohibit all consumption of marijuana and that Detwiler understood that prohibition.

12

Accordingly, we hold that the sentencing conditions prohibiting marijuana consumption on which the trial court relied in revoking Detwiler's SSOSA are not unconstitutionally vague.[2]

C.      REVOCATION OF SSOSA

In his SAG, Detwiler argues that the trial court erred in revoking his SSOSA for smoking marijuana when he had medical authorization to use marijuana for pain control. He claims among other things that his therapist was comfortable with his use of marijuana for medical purposes. We hold that the trial court did not abuse its discretion in revoking Detwiler's SSOSA.

Under RCW 9.94A.670(11), the trial court may revoke a SSOSA if the offender violates a sentence condition during the period of community custody. "A SSOSA sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence." *State v. McCormick*, 166 Wn.2d 689, 705, 213 P.3d 32 (2009). Revocation of a SSOSA based on the violation of sentencing conditions is within the trial court's discretion, and we will not disturb that decision absent an abuse of discretion. *Id.* at 705-06. An abuse of discretion occurs when the court's decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Id.* at 706.

Here, Detwiler stipulated to a violation of the sentencing conditions prohibiting the consumption of marijuana. Therefore, under RCW 9.94A.670(11) the trial court had discretion to revoke the SSOSA.

It may seem harsh to revoke Detwiler's sentence and re-impose his 131.9 month sentence for consuming marijuana with medical authorization. However, the trial court stated at

---

[2] In his SAG, Detwiler asserts that the trial court erred in imposing a sentencing condition prohibiting the use of medical marijuana. We need not address this claim separately because we have considered and rejected the same argument above.

sentencing that it was reluctant to grant the privilege of a SSOSA sentence given Detwiler's

history and guarded prognosis. And the trial court made it very clear that it would revoke the

SSOSA for a single violation:

> [K]now this: You violate one term of my order, if I hear one word from the community corrections officer that you had one sip of wine or one beer or one non-prescription illegal drug, you will spend 131.9 months in prison. You get one shot, one opportunity to follow every rule, every condition by the community corrections officer, by the treatment provider and you have all of the conditions that I am going to go over with you. So I don't want there to be any surprise if there is a violation. . . . I will send you to prison. I will revoke your SSOSA without another thought.

RP (Aug. 15, 2014) at 30-31. Given the trial court's statements, it should not have been a

surprise to Detwiler that the trial court would revoke his SSOSA if he violated the prohibition

against consuming marijuana.

Further, when Detwiler questioned his CCO whether he could use marijuana for medical

purposes, the CCO expressly directed him not to use marijuana until the sentencing conditions

regarding marijuana use could be clarified. Detwiler chose to disregard that directive and used

marijuana anyway based on his own incomplete reading of his judgment and sentence.

We hold that the trial court did not abuse its discretion in revoking Detwiler's SSOSA

based on his stipulated violation of the sentencing condition prohibiting consumption of

marijuana.

## CONCLUSION

We affirm the trial court's order revoking Detwiler's SSOSA and re-imposing his

suspended sentence.

14

No. 47169-8-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, C.J.

SUTTON, J.

15