# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60378-1-II |
| Respondent, | |
| v. | |
| THOMAS BLAKE BURRILL, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Thomas Burrill stole more than $54,000 from Eloise Holden, who was 96 years old at the time, and her daughter Lenné Musarra. Musarra and Holden had hired Burrill to install solar panels on Holden's commercial property in downtown Tacoma.

Though Burrill accepted checks from Holden and Musarra for purchasing solar equipment and permits, he never purchased any solar equipment, applied for any permits, or worked to install solar panels on Holden's commercial property. He cashed one check made out to his former employer, even though he no longer worked there. A jury found Burrill guilty of first degree theft for stealing money from Holden and Musarra, and first degree identity theft for accepting money paid to his former employer.

In addition to a fourteen-month term of confinement, the trial court sentenced Burrill to twelve months of community custody on the identity theft charge. As a community custody condition, the trial court ordered Burrill to undergo a substance abuse evaluation and comply with any recommended treatment. Burrill argues on appeal that the trial court abused its discretion when

it ordered Burrill to undergo substance abuse evaluation and treatment, and the trial court committed a scrivener's error when it assessed the DNA fee. Burrill also filed a statement of additional grounds for review (SAG). The state concedes that the trial court committed a scrivener's error when it assessed the DNA fee.

We conclude the trial court abused its discretion in ordering Burrill to undergo substance abuse evaluation and treatment. While the trial court was not manifestly unreasonable in determining that Burrill had a substance abuse issue, there is no evidence that directly or indirectly tied substance abuse to the identity theft, the crime for which the trial court imposed community custody. The trial court did not explicitly find, nor was there ample evidence to support, that a chemical dependency contributed to the identity theft.

With regard to Burrill's remaining arguments, we accept the State's concession that the trial court committed a scrivener's error in assessing the DNA fee. The arguments Burrill makes in his SAG do not warrant reversal.

We remand for the trial court to strike the substance abuse evaluation and treatment condition and the DNA fee from Burrill's judgment and sentence, but we otherwise affirm.

FACTS

I. BACKGROUND

From late 2017 to June 2019, Burrill was a contractor for a solar business. Burrill attempted to sell Holden solar panels for her home while he was a contractor for the solar business, but Holden ultimately declined.

In June 2019, the solar business terminated Burrill. After his separation from the solar business, Burrill returned to Holden's house with a new proposal. Holden agreed to pay Burrill

$28,000 to install 38 solar panels on Holden's house. Burrill successfully installed the solar panels at Holden's home.

Burrill then offered to install solar panels on Holden's commercial property in Tacoma. Burrill provided documentation to Musarra and Holden about how commercial solar worked, and this documentation had the name of the solar business where Burrill was previously a contractor. Holden and Musarra wrote a series of checks to Burrill for solar equipment and installation. Burrill told them to write the checks to Burrill or Burrill's business, Foundations Financial Group, and one time to the solar business he previously worked for. At no point did the solar business contract to provide any work for Musarra or Holden. Holden and Musarra gave multiple checks to Burrill for a total of $54,569.60.

Burrill negotiated most of the checks at a credit union where he had an account, including the check to the solar business. Burrill then withdrew cash and spent money at various businesses. Burrill's bank account records showed no solar-related transactions.

Eventually, Musarra went to the commercial property to inspect the roof. Musarra saw no evidence of any solar-related work or any solar-related equipment on the roof. When Musarra called Burrill to see when the solar work would begin, Burrill replied that it would be best to explain the situation in person. When he met with Musarra and Holden, Burrill claimed that someone had stolen all of the equipment from a warehouse where he was storing it. During the meeting, Musarra observed that Burrill had "gained a lot of weight." 3 Verbatim Rep. of Proc. (VRP) at 294.

Musarra and Holden never spoke with Burrill again. Burrill never started any solar work on Holden's commercial property, and neither Holden nor Musarra received any of their money back.

A close friend of Holden reported Burrill's theft and law enforcement investigated. They confirmed that Burrill never applied for a permit for solar or electrical work for Holden's commercial property. Law enforcement confirmed that Burrill deposited or cashed Holden and Musarra's checks, and there was no evidence that Burrill took any steps to install solar panels at Holden's commercial property.

II. PROCEDURAL HISTORY

The State ultimately charged Burrill with first degree theft for taking the funds obtained from Holden's and Musarra's checks and first degree identity theft for using the solar business's name to obtain and deposit a check from Holden. The jury found Burrill guilty as charged. The jury also found two aggravators: Burrill abused his position of trust, and the crime was a major economic offense. At sentencing, the trial court ordered 14 months of confinement for the identity theft and 9 months for the first degree theft, to be served concurrently. The trial court also ordered 12 months of community custody on the identity theft.

In its sentencing memorandum and at the sentencing hearing, the State asked the trial court to impose a community custody condition ordering Burrill to undergo an alcohol and "drug evaluation, follow up, and any other counseling recommended." 6 VRP at 6. The State believed that Burrill suffered from a substance abuse problem. The State mentioned that the victims or another witness "thought that [Burrill] was acting unusual when he came back after not completing any of the work . . . and was acting differently than . . . earlier and seemed to be under the influence

4

of something." 6 VRP at 6. The State acknowledged that these observations were not in the trial testimony but were statements made out of court.

The trial court agreed that Burrill may have a substance abuse problem, stating that in the separate case for which he was also being sentenced, Burrill "was remembered as a frequent shoplifter, which kind of fits the pattern of somebody who may have a drug or alcohol problem." 6 VRP at 6. During Burrill's remarks to the court, he stated, "I do wrestle with a lot of demons. I have been reading the AA handbook. . . . The demons I struggle with, I have been working with my higher power to remove them from my character." 6 VRP at 10-11.

Burrill objected to the substance abuse evaluation. Over Burrill's objection, the trial court ordered Burrill to undergo an evaluation for substance abuse and comply with any recommended treatment.

The trial court also ordered a DNA sample to be collected. Since the trial court found Burrill to be indigent, the trial court made clear that it would not be assessing the DNA fee. In the judgment and sentence, the court crossed off and wrote "waived" next to crime victim assessment and criminal filing fee. Clerk's Papers (CP) at 92. The trial court did not cross off or write "waived" next to the DNA fee. CP at 92. The trial court also ordered restitution of $54,649.60 to Holden.

Burrill appeals the community custody condition and the DNA fee in his judgment sentence. Burrill has also filed a SAG.

ANALYSIS

I. CLAIMS UNDER RCW 9.94A

Burrill argues that the trial court abused its discretion when it imposed a substance abuse evaluation and treatment. Specifically, Burrill contends that under RCW 9.94A.703(3)(c), there

5

must be showing that substance use contributed to the offense, but there was no such showing here. Burrill does not address RCW 9.94A.703(3)(d). Burrill also argues that the trial court lacked statutory authority to impose substance abuse evaluation and treatment under RCW 9.94A.607(1) because the trial court failed to make the required finding that chemical dependency contributed to the offense, and the record does not contain ample evidence to support such a finding.

The State responds that the trial court did not abuse its discretion under 9.94A.703(c) and (d) because the record amply supports the trial court's determination that substance abuse was related to the crimes. The State concedes that the trial court did not make an explicit finding that a chemical dependency contributed to the offense to support this condition under RCW 9.94A.607(1). However, the State explains that nevertheless the record amply supports such a finding, which is enough.

A sentencing court must act within its statutory authority. *State v. Miller*, 159 Wn. App. 911, 930, 247 P.3d 457 (2011). We review a community custody condition de novo when the key question is whether the trial court had any authority to order the condition at issue. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). When a trial court acts within its statutory authority, we review the discretionary decision as to whether the condition should be imposed for abuse of discretion. *State v. Johnson*, 180 Wn. App. 318, 326, 327 P.3d 704 (2014) (citing *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010)). We reverse for abuse of discretion only if the conditions are manifestly unreasonable. *Valencia*, 169 Wn.2d at 791-92; *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). To be manifestly unreasonable, the trial court must have exercised discretion on untenable grounds or for untenable reasons. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021).

Crime-related community custody "conditions are usually upheld if reasonably crime related." *State v. Nguyen*, 191 Wn.2d 671, 683, 425 P.3d 847 (2018). At sentencing, courts may consider a broad array of evidence—including hearsay—because evidence rules do not apply. *State v. Deskins*, 180 Wn.2d 68, 83, 322 P.3d 780 (2014) (citing ER 1101(c)(3)).

A.      RCW 9.94A.703

Under RCW 9.94A.703(3)(c), "the court may order an offender to . . . [p]articipate in crime-related treatment or counseling services." In resolving whether proposed treatment or services are crime related, courts assess the factual basis under a substantial evidence standard. *State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018). The reviewing court will only "strike the challenged condition if there is no evidence in the record linking the circumstances of the crime to the condition." *Id*. "If there is a reasonable basis for the condition, the court will uphold it." *Id.*

Similarly, under RCW 9.94A.703(3)(d), a trial court "may order an offender to . . . [p]articipate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." For rehabilitative programs to reasonably relate to the risk of reoffending or safety of the community, the evidence must show that substance abuse "contributed to the offense." *State v. Jones*, 118 Wn. App. 199, 208, 76 P.3d 258 (2003). We read RCW 9.94A.703(3)(d) harmoniously with RCW 9.94A.703(3)(c). *See id*. Any reading of RCW 9.94A.703(3)(d) that does not require such evidence would render RWC 9.94A.703(3)(c) superfluous. *See id*.

For example, in *Jones*, the trial court erred in ordering Jones to undergo alcohol counseling even though Jones admitted to drug use. 118 Wn. App. at 207-08. Jones explained at his plea hearing that he had used methamphetamine at the time of his crimes. *Id*. at 202. There was no

evidence that alcohol contributed to the offense. *Id*. The court ordered Jones to participate in alcohol counseling though it did not "enter findings that alcohol . . . had contributed to Jones' crimes." *Id*. at 203. This court held that since no evidence showed that alcohol contributed to Jones' offenses, the trial court erred by ordering Jones to undergo alcohol counseling. *Id*. at 208.

We acknowledge that at sentencing, the trial court noted Burrill's theft conviction under a different cause number fit a typical pattern for a drug user. And in the sentencing hearing, Burrill made three statements that could be interpreted as relating to substance abuse: (1) he "wrestle[s] with a lot of demons"; (2) he had "been reading the AA handbook"; and (3) he had been "working with [his] higher power to remove [the demons] from [his] character." 6 VRP at 10-11. Finally, Musarra testified that she noticed at their final meeting that Burrill had gained weight, and she or another witness said that he was acting differently and like he was under the influence of something. Though this statement occurred out of court, the trial court can consider hearsay during sentencing.

But the trial court imposed the community custody condition only for the identity theft conviction. There is no evidence that directly or indirectly tied substance abuse to the identity theft. Burrill's comments about demons and AA, which stands for Alcoholics Anonymous, occurred at sentencing, roughly four years after the offenses occurred. While his weight gain did occur around the time of the identity theft, weight gain alone is not enough to support an inference of substance abuse. And while one of the witnesses said Burrill acted like he might be under the influence, it is unclear from the record if this occurred around the time of the identity theft.

As this court has held, there must be evidence relating the alleged substance abuse to the offense in question. Nothing in this record links the suspected substance abuse to the identity theft.

Similarly, there is no evidence that substance abuse contributed to Burrill's identity theft. While we agree it was not unreasonable for the trial court to conclude that Burrill may have suffered from substance abuse issues, there is insufficient support in the record for trial court to conclude that Burrill's substance abuse issues contributed to the identity theft.

B.      RCW 9.94A.607(1)

Under RCW 9.94A.607(1), if the court "finds that the offender has any chemical dependency that has contributed to his or her offense, the court may, as a condition of the sentence . . ., order the offender to participate in rehabilitative programs . . . reasonably related to the circumstances of the crime for which the offender has been convicted."

At least one case has upheld the condition so long as ample evidence supported the conclusion that chemical dependency contributed to the conviction. *See State v. Powell*, 139 Wn. App. 808, 819-20, 162 P.3d 1180 (2007) (held that the record amply supported the decision to impose substance abuse treatment as a condition of the sentence), *rev'd on other grounds*, 166 Wn.2d 73, 206 P.3d 321 (2009).

Here, the trial court did not make an explicit finding that chemical dependency contributed to the identity theft, and as explained above, there was insufficient evidence to conclude that a chemical dependency contributed to the identity theft. Therefore, under RCW 9.94A.607(1), the trial court erred when it ordered a substance abuse evaluation. We remand for the trial court to strike the challenged condition.[1]

II. SCRIVENER'S ERROR

---

[1] We note, however, that the Department of Corrections has broad authority to "require the offender to participate in rehabilitative programs, or otherwise perform affirmative conduct, and to obey all laws." RCW 9.94A.704(4).

Burrill argues that the trial court made a scrivener's error when it failed to waive the $100 DNA fee. The State concedes that this was a scrivener's error. We accept the State's concession and order the trial court to strike the DNA fee on remand.

### III STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Burrill argues that he received ineffective counsel because his attorney failed to interview witnesses before trial, hardly cross-examined witnesses during trial, rarely corresponded with Burrill, and played video games on his phone before trial. Burrill also argues we should reverse based on judicial misconduct because the judge referred to the trial as a "lawsuit" multiple times, "possibly making the jury think the only repercussions were financial." SAG.

The facts regarding whether defense counsel interviewed witnesses or played video games before trial are not in our record on appeal and thus these issues would be best resolved in a personal restraint petition. Burrill does not explain how he was prejudiced by counsel's alleged failure to adequately cross-examine witnesses, a necessary element of ineffective assistance of counsel, so this claim also fails. *State v. Bertrand*, 3 Wn.3d 116, 133, 546 P.3d 1020 (2024).

With regard to the claim of judicial misconduct, the record does not support the requested finding. The fact that the judge called the case "a lawsuit" was not error. The judge gave the jury instructions about the elements of the crimes and the burden of proof, and nothing in the record suggests that the jury's ability to apply the beyond a reasonable doubt burden of proof to the elements of the charged crimes was in any way impacted by the trial court's description of the case as a "lawsuit".

CONCLUSION

We remand to the trial court to strike the substance abuse evaluation condition and the DNA fee from Burrill's judgment and sentence, but we otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

VELJACIC, A.C.J.

CHE, J.