# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47773-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DEREK J. DOSSANTOS, | |
| Appellant. | |

BJORGEN, C.J. — Derek John Dossantos appeals the sentencing conditions attached to his convictions for first degree child molestation and indecent liberties by forcible compulsion.  In his statement of additional grounds (SAG), he also makes a number of arguments challenging his convictions and the imposition of a $200 criminal filing fee.

As part of his Special Sex Offender Sentencing Alternative (SSOSA) and community custody, the trial court prohibited Dossantos from perusing and possessing pornography or sexually explicit materials, from frequenting establishments where minor children are likely to be present or congregate, and from using public social media websites, Skype, or sexually-oriented 900 phone numbers.  He was also required to obtain a chemical dependency evaluation and treatment.  Dossantos challenges these conditions on various grounds.

We hold that the community custody conditions relating to perusing and possessing sexually explicit materials, and using social media websites, Skype, or sexually-oriented 900 phone numbers are not crime-related and are invalid. We hold that the SSOSA and community custody conditions relating to chemical dependency are invalid because the trial court did not make the statutorily required finding. We further hold that the SSOSA condition prohibiting Dossantos from perusing and possessing pornography is statutorily authorized as a precursor activity, but is void for vagueness, and that the SSOSA and community custody conditions preventing him from frequenting places where minor children are likely to be present or congregate are not void for vagueness. Finally, we hold that the trial court did not err in imposing a $200 mandatory criminal filing fee and that Dossantos' SAG challenges fail.

Therefore, we affirm Dossantos' convictions. We also affirm the community custody and SSOSA conditions that prohibit Dossantos from frequenting establishments where minor children are likely to be present and the $200 criminal filing fee. However, we reverse the conditions relating to pornography, sexually explicit materials, public social media websites, Skype, sexually-oriented 900 phone numbers, and chemical dependency, and we remand to the trial court to amend Dossantos' judgment and sentence consistently with these rulings.

FACTS

On July 8, 2013, Lucy Kemp took her eight-year-old daughter, LMK, to go swimming at a pool located in their condominium complex. Dossantos was also there swimming. Dossantos "play[ed]" with LMK by picking her up and tossing her into the pool. IV Report of Proceedings (RP) at 102. After about 10 minutes, LMK left the larger pool to go into a smaller kiddie pool. Dossantos followed LMK into the kiddie pool.

2

There, Dossantos grabbed LMK's wrist and pulled her hand to his genital area and said, "[T]ouch it." III RP at 73. LMK, unable to pull her hand back, felt something like "[a] circle" or roll of quarters. III RP at 72. LMK loudly announced that she needed to go to the bathroom and left the pool area with Kemp. LMK later disclosed to Kemp the incident with Dossantos.

Dossantos was charged by amended information with first degree child molestation and indecent liberties by forcible compulsion. Dossantos' first trial resulted in a hung jury. At the second trial, the jury found him guilty as charged.

Dossantos moved for a new trial, arguing (1) that the presiding juror pressured juror number 11 into convicting him and (2) that the presiding juror made statements during breaks throughout the trial that he worked with children and "took great pride in helping kids." Clerk's Papers (CP) at 270. The trial court denied Dossantos' motion.

Before sentencing, Dossantos underwent a psychosexual evaluation with Daniel DeWaelsche, who examined the nature of Dossantos' offenses as well as his sexual and drug history. Based on his evaluation, DeWaelsche provided recommendations in the event Dossantos underwent sex offender treatment. In addition, a community correction officer completed a presentence investigation outlining recommendations for Dossantos' sentence. Both DeWaelsche's evaluation and the presentence investigation report were submitted to the trial court for its consideration.

The trial court imposed a SSOSA for a minimum of three years and community custody for the remainder of Dossantos' life. The trial court incorporated all of DeWaelsche's recommendations as sentencing conditions. As part of his three-year minimum SSOSA sentence, the trial court ordered the following conditions:

3

The defendant shall not peruse pornography, which shall be defined by the treatment provider.

The defendant shall not frequent establishments where minor children are likely to be present such as school playgrounds, parks, roller skating rinks, [or] video arcades.

The defendant shall . . . obtain . . . chemical dependency eval[uation] if [treatment] provider finds appropriate.

CP at 351.

Further, as part of his lifetime community custody, the trial court imposed the following

conditions:

Do not go to or frequent places where children congregate, (I.E. Fast-food outlets, libraries, theaters, shopping malls, play grounds and parks, etc.) unless otherwise approved by the Court.

. . . .

You are prohibited from joining or perusing any public social websites (Face book, Myspace, *Craigslist*, etc.), Skyping, or telephoning any sexually-oriented 900 numbers.

Do not possess or peruse any sexually explicit materials in any medium. Your sexual deviancy treatment provider wi[ll] define sexually explicit materials. Do not patronize prostitutes o[r] establishments that promote the commercialization of sex.

Obtain both a Mental Health Evaluation and a Chemical Dependency Evaluation, and then follow up on receiving any recommended treatment until it is successfully completed as directed.

CP at 355. The trial court also imposed a $200 criminal filing fee.

Dossantos appeals.

ANALYSIS

I. STATUTORY AUTHORITY TO IMPOSE CRIME-RELATED CONDITIONS
AND THOSE RELATING TO PRECURSOR ACTIVITIES

Dossantos argues that a number of conditions are invalid because they are not crime-related or identified in his treatment plan as a precursor activity to his offenses. Those conditions are: (1) the SSOSA condition prohibiting him from perusing pornography, (2) the community custody condition prohibiting him from possessing or perusing sexually explicit materials, (3) the community custody condition preventing him from perusing public social media websites, using Skype, or calling sexually-oriented 900 phone numbers, and (4) the SSOSA and community custody conditions requiring him to receive a chemical dependency evaluation and treatment. With the exception of the SSOSA condition prohibiting him from perusing pornography,[1] we agree with Dossantos and reverse these conditions.

A.      Legal Principles

We review de novo whether the trial court had statutory authority to impose a sentencing condition. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014). If the trial court had statutory authority, we review its decision to impose the condition for an abuse of discretion. *Id.* at 326. An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

A defendant who meets certain requirements may be eligible for a SSOSA, which is an alternative sentence to imprisonment. RCW 9.94A.670(2), (4). In determining a defendant's

---

[1] However, we determine in Part II of our Analysis that the SSOSA condition prohibiting pornography is void for vagueness.

amenability to treatment, a court may rely on a psychosexual evaluation prepared by a treatment

provider. *See* RCW 9.94A.670(3). The evaluation must include an analysis of the offender's

amenability to treatment, relative risk to the community, and a treatment plan. RCW

9.94A.670(3)(b). The treatment plan, among other things, must include recommendations as to

the

> (i)　　Frequency and type of contact between offender and therapist;
> (ii)　　Specific issues to be addressed in the treatment and description of planned treatment modalities;
> (iii)　　Monitoring plans, including any requirements regarding living conditions, lifestyle requirements, and monitoring by family members and others;
> (iv)　　Anticipated length of treatment; and
> (v)　　*Recommended crime-related prohibitions and affirmative conditions, which must include, to the extent known, an identification of specific activities or behaviors that are precursors to the offender's offense cycle*, including, but not limited to, activities or behaviors such as viewing or listening to pornography or use of alcohol or controlled substances.

RCW 9.94A.670(3)(b)(i)-(v) (emphasis added).

If the court orders a SSOSA instead of incarceration, it must also order sex offender

treatment for up to five years in duration. RCW 9.94A.670(5)(c). Further, the court must

impose the specific prohibitions and affirmative conditions relating to the known precursor

activities or behaviors identified in the proposed treatment plan pursuant to RCW

9.94A.670(3)(b)(v). RCW 9.94A.670(5)(d).

Along with ordering treatment and the affirmative conditions related to an offender's

precursor activities, a trial court must also impose a term of community custody for at least the

maximum term in the standard range of the defendant's offenses. RCW 9.94A.670(5)(b); RCW

9.94A.507. Both Dossantos' first degree child molestation and indecent liberties by forcible

compulsion convictions are class A felonies with a maximum punishment term of life

6

imprisonment. Former RCW 9A.20.021(1)(a) (2011); RCW 9A.44.083(2); former RCW 9A.44.100(2)(b) (2007). As such, the trial court imposed a community custody term for the remainder of Dossantos' life as part of his SSOSA.

In addition to imposing affirmative conditions related to an offender's precursor activities as part of a SSOSA, the trial court has discretion to impose "[c]rime-related prohibitions" as conditions of either the SSOSA or community custody. RCW 9.94A.670(6)(a); former RCW 9.94A.703(3)(f) (2009). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime." Former RCW 9.94A.030(10) (2012). "Such conditions are usually upheld if reasonably crime related." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). "[N]o causal link need be established between the prohibition imposed and the crime committed, so long as the condition relates to the circumstances of the crime." *State v. Acrey*, 135 Wn. App. 938, 946, 146 P.3d 1215 (2006).

In imposing a sentencing condition as part of a SOSSA or community custody, the trial court may rely on a defendant's mental health evaluation, *see* RCW 9.94A.670(3)(b)(v), (5)(d), or a presentence investigation report. *See State v. Irwin*, 191 Wn. App. 644, 658, 364 P.3d 830 (2015).

B.    Sexually Explicit Materials/Pornography

Dossantos argues that the SSOSA and community custody conditions respectively prohibiting him from perusing pornography or possessing or perusing sexually explicit materials are not crime-related and were not identified as a precursor activity to his offenses in his treatment plan. We hold that the sexually explicit materials condition is not crime-related, but that the pornography condition was adequately identified as a precursor condition.

7

Initially, we observe that the nature of Dossantos' offenses do not indicate that pornography or sexually explicit materials were involved. Dossantos molested LMK at a swimming pool. Nothing in the trial record indicates that pornography or sexually explicit materials contributed to that crime.

The State contends, however, that Dossantos' psychosexual evaluation provides the nexus between his offenses and the conditions prohibiting pornography and sexually explicit materials. In his psychosexual evaluation, DeWaelsche stated that Dossantos reported that he

- [M]asterbates approximately 4 times a week, generally to pornographic images of females he views on the Internet at "Porn Hub"
- Perus[ed] pornographic magazines on approximately 30 occasions since his age of 12
- View[ed] X-rated videos/DVDs on approximately 100 occasions since his age of 12
- View[ed] pornographic Internet sites on approximately 200 occasions since his age of 12

Suppl. CP at 389 (Sealed Ex. 20-Psychosexual Evaluation). In his treatment plan recommendations, DeWaelsche stated that Dossantos "should be required to sign a treatment contract," consistent with the following recommendation:

> Possession and perusal of pornography, as defined by his therapist, should be prohibited. This includes, but is not limited to, Internet content, magazines, books, and X-rated films or videos.

Supple. CP at 389 (Sealed Ex. 20-Psychosexual Evaluation).

The State concedes that DeWaelsche did not specifically identify Dossantos' perusal of pornography and sexually explicit materials as a precursor activity or as related to his offenses. However, in his psychosexual evaluation, DeWaelsche specifically set out Dossantos' viewing of pornographic magazines, pornographic websites, and x-rated videos in his history. The psychosexual evaluation then recommended that possession and perusal of pornography be prohibited, to include, but not be limited to, website content, magazines, books, and x-rated films

or videos. The evaluation thus shows that DeWaelsche thought that use of pornography was an element of Dossantos' sexual history and that DeWaelsche was concerned enough about its future effects to recommend its flat prohibition. Even though the term "precursor" was not used, DeWaelsche plainly considered use of pornography to have had some effect on Dossantos' actions.[2] Thus, the trial court was authorized to impose the pornography prohibition condition under the SSOSA because it was identified as a precursor activity in the treatment plan. With this conclusion, we do not reach whether the pornography condition is also crime-related.

Turning to the community custody condition prohibiting sexually explicit materials, we must initially confront the State's argument that because the trial court imposed the community custody condition as part of Dossantos' SSOSA, the court was also authorized to impose that community custody condition because it was identified as a precursor activity.

The trial court imposes community custody and SSOSA conditions under separate authority. *Compare* former RCW 9.94A.703(3)(f) *with* RCW 9.94A.670(3)(b)(v), (5)(d). SSOSA conditions last only up to five years, while community custody conditions are for usually a much longer period. *Compare* RCW 9.94A.670(5)(c) *with* RCW 9.94A.670(5)(b); RCW 9.94A.507. Conditions based on precursor activities are authorized as part of the treatment conditions subject to the five-year maximum, RCW 9.94A.670(5)(c), (d), but not as part of community custody conditions authorized by RCW 9.94A.670(5)(b) and former RCW

---

[2] Dossantos argues that DeWaelsche's statement in the evaluation that he sees as a "positive" that Dossantos had "[n]o prior history of sexually deviant behavior" demonstrates that Dossantos' pornography usage was not a precursor to the crime. Reply Br. at 6. Despite this observation, we find that DeWaelsche's ultimate treatment recommendation, prohibiting Dossantos from viewing pornography, still qualifies this condition as a precursor activity.

9.94A.703. Therefore, a trial court does not possess separate authority to impose a community custody condition simply because it was identified as a precursor activity.

Nevertheless, we still may use a psychosexual evaluation to analyze whether a community custody condition was "crime-related." *See State v. Detwiler*, noted at 194 Wn. App. 1005, 2016 WL 2874029 at * 4, *review denied,* 186 Wn.2d 1016 (2016). DeWaelsche's treatment plan does not identify use of sexually explicit materials as a crime-related activity. The treatment recommendation is specifically tailored toward "pornography," not sexually explicit materials. Further, there is no evidence that Dossantos' use of "sexually explicit materials" somehow contributed to his offenses. Thus, this condition is not crime-related and the trial court was not authorized to impose it.

In short, we find that the community custody condition prohibiting possessing or perusing sexually explicit materials was not crime-related, and thus, the trial court could not impose that condition. However, the trial court had statutory authority to impose the SSOSA condition prohibiting the perusal of pornography because that was identified as a precursor activity. We address the vagueness challenge to the pornography condition below.

C.      Public Social Media Websites, Skype or Telephoning 900 Numbers

Dossantos argues that the community custody condition preventing him from joining or perusing public social media websites, Skype, or calling sexually-oriented 900 numbers is not crime-related.[3] We agree.

---

[3] Like the community custody condition prohibiting sexually explicit materials, we only examine whether this condition could be imposed because it was crime-related. As already noted in Part I, Sec. 2, we disagree with the State that the trial court had separate authority to impose a community custody condition because it was identified as a precursor activity.

Nothing in the trial record indicates that Dossantos was using social media, Skype, or calling 900 numbers at the time he molested LMK. The State contends, however, that Dossantos' psychosexual evaluation provides the nexus between his offenses and this condition, specifically pointing to Dossantos' identified behaviors of patronizing an adult book store and topless lounges about five times since the age of 18. That behavior, however, does not show how use of public social media websites, Skype, or 900 numbers were directly related to the circumstances of the crime. *See* former RCW 9.94A.030(10).

The State also points to two of DeWaelsche's recommendations to show a nexus between the condition at issue and his offenses: the recommendations (1) that Dossantos "should be prohibited from unsupervised contact and communication with his victims, other minor children, and physically or mentally vulnerable individuals" and (2) that his "relations with the community should be carefully monitored." Suppl. CP at 389 (Sealed Ex. 20-Psychosexual Evaluation). These broad recommendations, though, do not show a direct relation between use of public social media websites, Skype, or 900 numbers and the circumstances of Dossantos' crimes.

Accordingly, we find that this community custody condition is not crime-related, and the trial court did not have authority to impose this condition.

D.      Chemical Dependency Evaluation and Treatment

Dossantos argues that the SSOSA and community custody conditions requiring him to receive a chemical dependency evaluation and treatment are not crime-related and were not identified as a precursor activity to his offenses. However, because the trial court did not make the required statutory finding in order to impose these conditions, we need not reach these arguments.

Former RCW 9.94A.607(1) (1999) provides the statutory authority to order a chemical dependency evaluation and treatment. It reads in part:

> Where the court *finds* that the offender has any chemical dependency that has contributed to his or her offense, the court may, as a condition of the sentence and subject to available resources, order the offender to participate in rehabilitative programs or otherwise to perform affirmative conduct reasonably related to the circumstances of the crime for which the offender has been convicted and reasonably necessary or beneficial to the offender and the community in rehabilitating the offender.

(Emphasis added.) "If the court fails to make the required finding, it lacks statutory authority to impose the condition." *State v. Warnock*, 174 Wn. App. 608, 612, 299 P.3d 1173 (2013).

At the sentencing hearing, the State informed the court that Dossantos' correction officer recommended that he obtain a chemical dependency evaluation based on the psychosexual evaluation. The court responded: "I will order that if it's deemed advisable by his treatment provider." VIII RP at 387. DeWaelsche's psychosexual evaluation recommended that he receive a chemical dependency evaluation. However, deferring to a treatment provider does not substitute for the finding under former RCW 9.94A.607(1) required to order a chemical dependency evaluation and treatment.

Because the trial court failed to make the requiring finding under former RCW 9.94A.607(1), it lacked authority to impose these conditions.

## II. VAGUENESS

Dossantos argues that the SSOSA and community custody conditions preventing him from frequenting places where minor children are likely to be present or congregate are void for vagueness. Dossantos also contends that his SSOSA condition prohibiting him from perusing pornography is void for vagueness. We hold that the two conditions dealing with places where

12

children may be present are not unconstitutionally vague, but the condition dealing with pornography is.

A.      Legal Principles

The guarantee of due process, contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, requires that legal standards such as community custody conditions not be vague. *Irwin*, 191 Wn. App. at 652-53. The rationale underlying this rule equally applies to SSOSA conditions.

To avoid vagueness, the condition must (1) provide ordinary people fair warning of proscribed conduct and (2) have standards that are definite enough to protect against arbitrary enforcement. *Id.* at 652-53. A sentencing condition is unconstitutionally vague if it fails to do either. *Id.* at 653. However, a sentencing condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. *Id.*

B.      Places Minor Children Congregate/Are Likely To Be Present

Dossantos argues that the SSOSA and community custody conditions preventing him from frequenting places where minor children would be present are void for vagueness. We conclude that neither condition is unconstitutionally vague.

To support his arguments, Dossantos cites *Irwin*, where one of the defendant's sentencing conditions stated that he could "not frequent areas where minor children are known to congregate, as defined by the supervising C[ommunity] C[orrections] O[fficer]." 191 Wn. App. at 652. The *Irwin* court struck this condition down under both prongs of the vagueness test. On the first prong, the court held that "[w]ithout some clarifying language or an illustrative list of

prohibited locations . . . the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" *Id.* at 655. As to the second prong, the court held that the condition was subject to arbitrary enforcement because the community corrections officer had discretion to determine which locations were prohibited. *Id.*

> Dossantos' community custody condition states:

> Do not go to or frequent places where children congregate, (I.E. Fast-food outlets, libraries, theaters, shopping malls, play grounds and parks, etc.) unless otherwise approved by the Court.

CP at 355.

Considering the first prong of the vagueness test, this condition separates itself from the flawed condition in *Irwin* in that it does contain a series of examples illustrating what is meant by "places where children congregate." We recognize that these examples describe a broad spectrum and could themselves raise questions about what the condition prohibits. For example, if fast-food outlets are off-limits, what about restaurants; if shopping malls are proscribed, what about separate department stores?

Nonetheless, each of the specific examples are places where children gather or congregate, which should give ordinary people fair warning of proscribed conduct. The condition does not prohibit presence at a place simply because children may also be present there. Nor do we read it or the corresponding SSOSA condition to prohibit attending church services or similar worship, although they would prohibit presence at religious education, programs, or recreational activities specifically involving children. As noted, a sentencing condition is not unconstitutionally vague merely because a person cannot predict its contours

with complete certainty. *Irwin*, 191 Wn. App. at 653. If Dossantos cannot predict with certainty

whether visiting a certain type of locale would violate the condition, he may seek court approval.

Dossantos' corresponding SSOSA condition states:

The defendant shall not frequent establishments where minor children are likely to be present such as school playgrounds, parks, roller skating rinks, [or] video arcades.

CP at 351. This condition also provides an illustrative list to give greater definition to locations

where "minor children are likely to be present." Its examples, though, are more closely related

to locations where children might likely be present and do not share the broad sweep of the

community custody condition. More so than the community custody condition, the SSOSA

condition would give an ordinary person fair warning of proscribed conduct.

Dossantos also challenges both conditions under the second prong of the vagueness test,

arguing that they are susceptible to arbitrary enforcement. *Irwin*, 191 Wn. App. at 652-53. As to

the community custody condition, he contends that because he is required to obtain court

approval before going to a place where children congregate, the condition acknowledges on its

face that it does not provide ascertainable standards for enforcement.

We concluded above that the community custody condition provides fair warning of

proscribed conduct under the first prong of the vagueness test. The ability to obtain a court

ruling to clarify the condition's application to places not listed among its examples does not

transform this condition to one that is susceptible to arbitrary enforcement.

More to the point, the cases cited to us under the second prong involve discretion

exercised by community corrections officers. *See State v. Bahl*, 164 Wn.2d 739, 758, 193 P.3d

678 (2008); *Sanchez Valencia*, 169 Wn.2d at 794; *State v. Sansone*, 127 Wn. App. 630, 639, 111

P.3d 1251 (2005). The condition at issue here involves discretion exercised by a court. We will not presume that a court will act arbitrarily in clarifying an uncertain application of this condition. Therefore, the community custody condition does not run afoul of the vagueness test.

As to the SSOSA condition, Dossantos contends that the condition is vulnerable to arbitrary enforcement because the condition "does not delegate the parameters of the condition to anyone," such as a correction officer. Br. of Appellant at 11. But it is for that exact reason that this condition is not vulnerable to arbitrary enforcement. *See Irwin*, 191 Wn. App. at 655.

Accordingly, we find that neither the community custody nor the SSOSA condition dealing with places where children may congregate are void for vagueness.

C.      Pornography

Dossantos argues that the SSOSA condition prohibiting him from possessing or perusing pornography is void for vagueness.[4] The State concedes that the pornography condition is unconstitutionally vague, and we accept the State's concession.

In *Bahl*, 164 Wn.2d at 754, the defendant argued that his sentencing condition "prohibit[ing] [him] from possess[ing] or access[ing] pornographic materials, as directed by the supervising community corrections officer" was unconstitutionally vague. (Internal quotation marks omitted.) Here, Dossantos' SSOSA condition reads: "[t]he defendant shall not peruse pornography, which shall be defined by the treatment provider." CP at 351. The SSOSA condition mirrors the language of the sentencing condition struck down in *Bahl*, except that his

---

[4] Dossantos argues in addition that the community custody condition prohibiting him from possessing or perusing sexually explicit materials is also void for vagueness. However, because we reverse this condition on other grounds, we do not reach this argument.

treatment provider, not community corrections officer, defines what pornography is. This difference, though, does not save it from the lack of definiteness found fatal in *Bahl*.

Accordingly, we accept the State's concession that the SSOSA condition prohibiting possession or perusal of pornography is void for vagueness.

### III. $200 CRIMINAL FILING FEE

Dossantos argues that the $200 criminal filing fee under former RCW 36.18.020(2)(h) (2013) is discretionary—not mandatory as articulated in *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). As such, he contends that the trial court erred in imposing it without first inquiring into his ability to pay. *See State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

We recently addressed this argument in *State v. Gonzales*, 198 Wn. App. 151, 153-55, 392 P.3d 1158, *review denied*, 188 Wn.2d 1022 (2017), which reaffirmed *Lundy* and held that a plain meaning analysis of former RCW 36.18.020(2)(h) dictates that the $200 criminal filing fee is a mandatory legal financial obligation. Accordingly, we follow *Gonzales* and hold that the trial court did not err in failing to conduct an individual financial inquiry before imposing the mandatory criminal filing fee.

### IV. APPELLATE COSTS

Dossantos asks that we exercise our discretion to deny any appellate costs. The State objects to our consideration of appellate costs at this time, noting that it has not yet submitted a cost bill. Under RAP 14.2, Dossantos may challenge any award of appellate costs before a commissioner of this court if the State decides to file a cost bill. Therefore, we decline to address this issue at this time.

17

## V. SAG

A.    Double Jeopardy

Dossantos argues that his two convictions subjected to him to double jeopardy. We disagree.

Both the federal and state constitutions prohibit a person from being punished twice for the same offense. *State v. Smith*, 177 Wn.2d 533, 545, 303 P.3d 1047 (2013). When analyzing a double jeopardy claim of this nature, we first examine whether the legislature intended to punish the crimes as separate offenses; if legislative intent is clear, we look no further. *State v. Freeman*, 153 Wn.2d 765, 771-72, 108 P.3d 753 (2005). If the legislature has not clearly stated its intent, we may apply the "same evidence" or "same elements" test to the charged offenses. *Id.* at 772, 776. Under this test, double jeopardy is present if the defendant is convicted of offenses that are identical both in fact and law. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). If there is an element in each offense, which is not included in the other, then the offenses are not identical in law. *See State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983). If proof of one offense would not necessarily also prove the other, then the offenses are not identical in fact. *See id.*

Turning to the present offenses, a person "is guilty of indecent liberties when he or she knowingly causes another person to have sexual contact with him or her or another (a) [b]y forcible compulsion." Former RCW 9A.44.100(1)(a). On the other hand, a person

> is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.083(1).

Dossantos' indecent liberties conviction required the State to show forcible compulsion, which is not an element of first degree child molestation. Dossantos' first degree child molestation conviction required the State to show that the victim was less than 12 years old and not married to the perpetrator, neither of which are required for his indecent liberties by forcible compulsion conviction. Thus, Dossantos' convictions are not the same in law. His convictions for these two crimes, therefore, do not violate the prohibition against double jeopardy.

B.      Sufficiency of the Evidence

Dossantos argues that there is insufficient evidence to support his two convictions because "the State was required to prove that [he] had sexual contact for purposes of sexual gratification." SAG at 2. We hold that the State provided sufficient evidence that Dossantos acted for the purpose of sexual gratification.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Price*, 127 Wn. App. 193, 201-02, 110 P.3d 1171 (2005). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Circumstantial evidence is as reliable as direct evidence. *Id.* at 201-02. We defer to the trier of fact regarding a witness's credibility or conflicting testimony. *Id.*

Both first degree child molestation and indecent liberties require the State to show that the defendant had "sexual contact" with the victim. RCW 9A.44.083; RCW 9A.44.010(2).

"'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

If the primary erogenous areas are touched or the parts of the body in close proximity to the primary erogenous areas are contacted, sufficient evidence exists to show the purpose of sexual gratification. *See State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009); *Price*, 127 Wn. App. at 202. However, if the contact with the erogenous areas are over the clothes, additional proof of sexual purpose is required, such as rubbing, moving the hand back and forth, heavy breathing, or whispering. *See, e.g.*, *Harstad*, 153 Wn. App. at 21.

Under these standards, the evidence was sufficient to show that Dossantos' contact with LMK was for sexual gratification. The record reflects that Dossantos grabbed LMK's wrist and pulled her hand toward his private area and ordered her to "touch it." Through Dossantos' coercion, she touched his penis, which LMK described as "[a] circle" or a roll of quarters. Although the contact was over Dossantos' bathing suit, his coercion and apparent arousal provide sufficient evidence for a jury to find that he was gratified sexually by his acts.

Dossantos also argues that the evidence is insufficient because LMK "later stated it was an accident, or not for purpose of sexual gratification." SAG at 3. While this testimony was in evidence, on a sufficiency challenge we "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Thus, this argument does not undermine the sufficiency of the evidence to sustain his conviction.

For these reasons, this claim fails.

C.      Ineffective Assistance of Counsel

Dossantos argues that he received ineffective assistance of counsel for a variety of reasons. We turn to each below.

1.      Legal Principles

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011).  If a defendant fails to establish either prong, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

2.      Speedy Trial

Dossantos argues he received ineffective assistance of counsel because his attorney did not raise a constitutional speedy trial right challenge.  We disagree.

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.  In order to show that a defendant's speedy trial right was violated, it must first be shown that the delay was "presumptively prejudicial." *State v. Iniguez*, 167 Wn.2d 273, 292, 217 P.3d 768 (2009).  The *Iniguez* court examined three factors in determining whether delay was presumptively prejudicial:  the passage of time, the complexity of the charges, and the reliance on eye witness testimony. *Id.*

The record shows that Dossantos was charged on August 8, 2013.  His first trial began on approximately September 10, 2014 and resulted in a hung jury on September 19.  About seven months later, Dossantos' second trial began on April 6, 2015.  Because Dossantos' charges were

relatively simple, not many witnesses testified, and there was a 13-month delay before

Dossantos' case went to trial the first time, prejudice can be presumed.

After presumptive prejudice has been shown, we examine the nature of the delay using

the balancing test discussed in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101

(1972), to determine whether a constitutional violation occurred. *Iniguez*, 167 Wn.2d at 292.

The *Barker* test is an ad hoc balancing test using four basic factors that examine the conduct of

both the State and the defendant to determine whether speedy trial rights have been denied. *Id.*

at 283, 292-93. Those four factors are: (1) the length of pretrial delay, (2) the reason for delay,

(3) the defendant's assertion of his or her right, and (4) prejudice to the defendant. *Id.*

The record does not indicate why it took 13 months for Dossantos' case to proceed to

trial. Nor does the record before us show whether Dossantos attempted to assert his right.

Finally, although Dossantos states that his "[e]mployment was interrupted" and that the "[d]elay

severely limited opportunity to defend self," SAG at 4, there is no evidence in the record to

support these allegations. Because the *Barker* test cannot be applied on this record, the

appropriate means to argue these points is a personal restraint petition. Through that petition,

Dossantos can bring materials outside this record before the court. *State v. McFarland*, 127

Wn.2d 322, 338, 899 P.2d 1251 (1995).

Because Dossantos fails to show a constitutional speedy trial violation, his claim of

ineffective assistance on that ground fails.

3.      Punishment

Dossantos argues that his defense attorney should have informed the jury about the

possible consequences he would face if convicted. However, "[i]t is well established that when a

22

jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *State v. Townsend*, 142 Wn.2d 838, 846, 15 P.3d 145 (2001) (quoting *Shannon v. United States,* 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994)). Accordingly, this claim fails.

    4.  Remaining Claims

  Dossantos argues that he received ineffective assistance of counsel because his attorney (1) did not "thoroughly speak to [Dossantos] about testifying," (2) did not show up to court when the jury read the verdict, (3) did not call favorable witnesses at trial, (4) dismissed part of the police report crucial to the case, and (5) committed "procedural errors." SAG at 1. As to the first two claims, these rely on facts that are outside the record, and consequently we do not reach them. The appropriate means to bring these arguments is a personal restraint petition where Dossantos may supplement the record. *McFarland*, 127 Wn.2d at 338.

  As to the other three claims, they are not particularized enough to permit appellate review. We consider an issue in a SAG only where it adequately informs us of the nature and occurrence of alleged errors. RAP 10.10(c); *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). We are "not obligated to search [the] record in support of claims made in [the] [SAG]." RAP 10.10(c); *State v. Thompson*, 169 Wn. App. 436, 493 n.195, 290 P.3d 996 (2012). Here, Dossantos' SAG arguments do not make clear what procedural errors occurred, what "favorable witnesses" were not called, or what police report Dossantos' counsel allegedly "dismissed."

  Accordingly, given the arguments and record presented, the remaining ineffective assistance of counsel claims fail.

5.      Juror Misconduct

Dossantos argues that "[a]fter juror deliberations one juror came forward and made a statement regarding my innocence . . . [r]esulting in [an] unfair trial." SAG at 4.

We take this claim to relate to the bases for Dossantos' motion for a new trial. If Dossantos is referring to other statements in his SAG claim, he does not tell us what they are. His motion for a new trial contended (1) that the presiding juror pressured juror number 11 into convicting him and (2) that the presiding juror made statements during breaks throughout the trial that he worked with children and "took great pride in helping kids." CP at 270.

We review a trial court's ruling on a motion for a new trial for an abuse of discretion. *State v. Balisok*, 123 Wn.2d 114, 117-18, 866 P.2d 631 (1994). Generally, appellate courts are reluctant to inquire into how a jury arrives at its verdict. *Id.* Thus, only a strong, affirmative showing of misconduct can overcome the policies of favoring stable and certain verdicts, and of preserving the secret, frank, and free discussion of the evidence by the jury. *Id.*

The thought processes of jurors inhere in the verdict and cannot be used to impeach it. *Allyn v. Boe*, 87 Wn. App. 722, 731-32, 943 P.2d 364 (1997). In *State v. Reynoldson*, 168 Wn. App. 543, 549, 277 P.3d 700 (2012), *review denied*, 183 Wn.2d 1009 (2015), we refused to consider a juror's statements in her declaration that she "never felt good about [the verdict]," "never believed it was appropriate," and "lied when [she] affirmed [her] 'guilty' vote when the jury was polled." The *Reynoldson* court squarely held that these statements "inherently required the juror to testify as to her mental process at the time[,]" which were "'beliefs' [that] inhered in the verdict." *Id.*

24

Here, juror number 11's declaration stated that the presiding juror would "grow irritated" and become "redder and redder" in the face when juror number 11 would express that she wanted to vote "no" to convict. CP at 269-70. She stated that her "vote has always been for not guilty. The only reason I changed [my vote] was because of the pressure." CP at 270. But like the juror declaration in *Reynoldson*, these statements go to her mental processes in the jury room. These are considerations that inhere in the verdict and cannot be considered in determining whether juror misconduct in fact occurred.

Turning to Dossantos' second ground for a new trial, juror number 11's declaration stated that "during breaks throughout the trial, the presiding juror mentioned on several occasions his work with children and he took great pride in helping kids. This was not disclosed during voir dire." CP at 270.

A juror's misrepresentation or failure to speak when called upon during voir dire regarding a material fact can amount to juror misconduct. *Allyn*, 87 Wn. App. at 729. In cases that involve a juror's alleged concealment of bias, the test is whether the movant can demonstrate (1) that information a juror failed to disclose in voir dire was material and (2) that a truthful disclosure would have provided a basis for a challenge for cause. *Dalton v. State*, 115 Wn. App. 703, 713, 63 P.3d 847 (2003). Only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial. *Id.*

In support of his argument to the trial court, Dossantos cited *Dalton*, 115 Wn. App. at 705-06, where the Daltons had sued various individuals and a hospital in tort for contributing to the death of their child. *Id.* After trial, the Daltons moved for a new trial on the basis that a juror intentionally concealed his actual bias against the Daltons. *Id.* at 708-09. Attached to their

motion was a declaration from an individual who observed one of the jurors state: "Dalton was an opportunist trying to profit from her child's death. . . . why [would] anyone . . . want to profit from a child's death." *Id.* at 709. That same juror represented during voir dire that there was nothing that would affect his ability to be fair and impartial. *Id.* at 714.

> The *Dalton* court held that
>
> the statement that the plaintiff in the action is an opportunist trying to profit from her child's death exhibits an actual bias on his part against Ms. Dalton and her cause of action. If Mr. Polumsky had revealed his bias during voir dire, the plaintiffs could have challenged his selection as a juror for cause.

*Id.*

Here, the presiding juror is alleged to be biased on the basis that he had worked with children and "took great pride in helping kids," which was not revealed during the voir dire process. CP at 270. However, unlike the juror's pernicious statement in *Dalton*, the presiding juror's alleged representations concerning his contact with kids do not demonstrate the level of personal bias to sustain a challenge for cause. Accordingly, this claim fails.[5]

6.    Comfort Dog

Dossantos argues that the trial court abused its discretion in allowing a "comfort dog" in the courtroom and that the presence of the dog was "inherently prejudicial." SAG at 6. He argues that the court never made a finding and the State never made a showing that the presence of the dog was needed.

---

[5] Dossantos' motion did not argue that the presiding juror had any implied bias. *See* RCW 4.44.170(1).

Before the trial began, the State informed the court that it was going to provide a comfort dog for LMK to observe while testifying but that it would keep the comfort dog outside the view of the jury. The defense did not object. Before LMK testified, the jury was excused, and the court and prosecutor both represented that the comfort dog was not visible to the jurors. The court invited defense counsel to make sure that he was satisfied the jurors could not see the comfort dog, to which defense counsel replied: "I'll accept what you have to represent." RP at 46. On this record, Dossantos fails to show that the jury was able to observe the comfort dog. Thus, no prejudice can be established, and the court did not abuse its discretion in allowing the comfort dog in these circumstances.

7.      Prosecutorial Misconduct

Dossantos argues that the State committed prosecutorial misconduct by comparing the facts of his case to other relevant appellate court decisions during the hearings on his motion for a new trial and for sentencing. To establish prosecutorial misconduct, the defendant must prove that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015).

The State merely cited to other appellate cases and analogized the facts of Dossantos' case to those other decisions. These measures lie at the heart of a lawyer's argument to a court and did not take place in front of a jury. Therefore, they were not improper and do not constitute misconduct. Accordingly, this claim fails.

CONCLUSION

We affirm Dossantos' convictions and the community custody and SSOSA conditions that prohibit Dossantos from frequenting establishments where minor children are likely to be

present.  We also hold that the sentencing court did not err in imposing a $200 mandatory criminal filing fee.

However, we reverse the community custody conditions prohibiting the possession or perusal of sexually explicit materials and the use of public social media websites, Skype, or sexually-oriented 900 numbers because they are not crime-related.  We also reverse the community custody and SSOSA conditions requiring a chemical dependency evaluation or treatment because the sentencing court did not make the statutorily required finding.  Finally, we reverse the SSOSA condition prohibiting the perusal of pornography as void for vagueness.

We remand for the sentencing court to amend Dossantos' judgment and sentence consistently with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

WORSWICK, J.

LEE, J.