# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54787-2-II |
| Respondent, | |
| v. | |
| DONALD W. KINGSLEY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Donald W. Kingsley appeals his conviction and sentence for first degree child molestation.  Kingsley challenges the sufficiency of the evidence to support his conviction, the trial court's findings of fact as being tailored to address issues raised in his first appeal, his exceptional sentence, several community custody conditions, and several legal financial obligations (LFOs).  In a Statement of Additional Grounds (SAG),[1] Kingsley argues that an informant improperly coerced Kingsley's incriminating statement, witnesses improperly rehearsed testimony for trial, and the prosecutor committed misconduct.

We affirm Kingsley's conviction.  And we affirm in part, reverse in part, and remand for the trial court to address the following community custody conditions consistent with this opinion: restitution costs for victim's counseling (Condition 8), prohibition of drug paraphernalia (Condition 10), physical and psychological testing (Condition 12), prohibition on accessing "any

---

[1] A defendant may file a statement of additional grounds "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed" on direct appeal by their counsel.  RAP 10.10(a).

pornographic materials" (Condition 19), prohibition on travel to "high-risk" areas and "all child-oriented settings/places" (Condition 22), and prohibition on travel to areas known for prostitution or drug related activities (Condition 23).  We reject Kingsley's argument that the trial court erred by imposing interest on non-restitution LFOs, but we reverse and remand for the trial court to strike the criminal filing fee and community custody supervision fee.

FACTS

E.P.[2] alleged that Kingsley molested her in her bedroom.  The State charged Kingsley with first degree rape of a child and first degree child molestation with a special allegation for using his position of trust to facilitate the crimes.  Kingsley waived his right to a jury trial and elected to have a bench trial.

A.      PRE-TRIAL HEARING

At a pre-trial evidentiary hearing, E.P. said that she had been practicing her testimony with her father so she would not be scared.  During that hearing, E.P. testified that her father had "been helping [her] with the words [she's] trying to say" because she was afraid she was going to get in trouble for saying certain words like "girl part," and her father told her she would not get in trouble for saying those words in court.  1 Verbatim Report of Proceedings (VRP) (Jan. 17, 2018) (Pre-Trial Hearing) at 119, 120.  When asked if her father had told her to say something like a specific word, E.P. said yes, but her father eventually told her to say whatever words felt comfortable.  At

---

[2] We use initials to protect the victim's identity and privacy interests.  General Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crimes* (Wash. Ct. App.),
https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2011-1&div=II.

trial, E.P. testified that her father did not tell her to use the phrase "girl parts" and did not tell her what to say. 1 VRP (Jan. 23, 2018) (Trial) at 319. E.P. also testified at trial that the reason why she had practiced her testimony with her father was so she would not be scared.

B.     TRIAL

Kingsley's trial took place on January 22 and 23, 2018. As relevant to this appeal, witnesses testified at trial to the following facts.

Kingsley was a close family friend who sometimes stayed with E.P.'s family. When E.P. was eight years old, Kingsley entered her bedroom one night and touched her. Kingsley started by rubbing E.P.'s blanket "below [her] stomach and above [her] legs." 1 VRP (Jan. 23, 2018) (Trial) at 290. Kingsley then put his hand under E.P.'s blanket, rubbed E.P.'s "private parts," stuck his hand inside her pants and "deep inside [E.P.'s] girl part" where he continued to rub. VRP (Jan. 23, 2018) (Trial) at 290. Kingsley left the bedroom but later returned and tried to touch E.P. again, but she told him to go away.

The next morning, E.P. asked to talk to her mother in private. E.P. told her mother that Kingsley had touched her over her clothes and inside her shorts. E.P. told her mother that Kingsley's touch made her feel uncomfortable, made her tell Kingsley no, and made her slap his hand. Her mother asked if she was sure, and E.P. said she was. E.P.'s mother asked if E.P. knew what the accusations meant and if it was possible that Kingsley had been checking to see if E.P. wet the bed or "any other possibility," and E.P. responded, "[M]om, I slapped his hand." 1 VRP (Jan. 23, 2018) (Trial) at 339. E.P.'s mother then took E.P. to her father's place of work. E.P. told her father that Kingsley rubbed the blanket near her private area or girl part, then put his hands up her shorts.

3

E.P.'s parents then took her to the police station. Detective Eric Smith of the Port Angeles Police Department interviewed E.P. In the interview, E.P. told Detective Smith that Kingsley put his hands in her shorts, touched her private parts, and rubbed her underneath all her clothes.

Law enforcement officers secured a wire order search warrant to secretly record a conversation between E.P.'s father and Kingsley. In this conversation, Kingsley first denied touching E.P. E.P.'s father said he believed E.P. and would end the friendship and call the police if Kingsley would not tell him the truth. After Kingsley went out for a smoke break, Kingsley returned to the conversation and said, "I did touch her." 1 VRP (Jan. 22, 2018) (Trial) at 254. E.P.'s father asked how Kingsley touched her, and Kingsley said "Probably in the way that she described." 1 VRP (Jan. 22, 2018) (Trial) at 254. Kingsley also said he "felt bad about it." 1 VRP (Jan. 22, 2018) (Trial) at 254. E.P.'s father asked if Kingsley made "full skin contact down there," and Kingsley said yes. 1 VRP (Jan. 22, 2018) (Trial) at 255. The recording of this conversation was admitted at trial. The trial court asked if there were any objections, and Kingsley's attorney said no.

Kingsley testified that he woke E.P. up and touched her upper leg because he had a niece that has seizures and wanted to make sure E.P. was not having a seizure.

C.    VERDICT AND SENTENCING

The trial court found Kingsley guilty of first degree child molestation with an aggravating factor of abuse of a position of trust. The trial court found Kingsley not guilty of first degree rape of a child.

In its oral ruling, the trial court found Kingsley not guilty of first degree rape of a child because E.P.'s testimony did not establish beyond a reasonable doubt that Kingsley penetrated her

vagina. As to the first degree child molestation charge, the trial court stated in its oral ruling that

E.P. disclosed the incident to her mother as soon as her mother was available to her and used age-

appropriate words to do so. The trial court said:

> Her mom looked for even, tried to convince her, well, couldn't it have been something else, could it have been touching in some other way, was this some sort of innocent thing? [E.P.] was adamant it was not innocent touching.

1 VRP (Jan. 23, 2018) (Trial) at 416. The trial court noted that E.P. disclosed the incident because

"she knew it was wrong." 1 VRP (Jan. 23, 2018) (Trial) at 416. As to the aggravating factor, the

trial court stated that Kingsley gained access to E.P. because of his special trust relationship with

E.P.'s family as a long term friend and babysitter.

At the sentencing hearing, the trial court reiterated that it found an aggravating factor

because Kingsley used his position of trust with E.P.'s family to commit the crime. Based on this

aggravating factor, the trial court set Kingsley's actual sentence as 70 months, "just a little bit over

the standard range" of 68 months. 1 VRP (Mar. 29, 2018) (Sentencing Hearing) at 448. The trial

court also stated that, because of Kingsley's lack of employment, it would only impose mandatory

LFOs. The trial court further stated that, because it was imposing only mandatory LFOs, it would

not go through a *Blazina*[3] analysis.

The judgment and sentence reflected the 70-month sentence. The judgment and sentence

also ordered Kingsley to pay a $200 criminal filing fee and community custody supervision fees.

And the judgment and sentence contained a provision stating that "[t]he financial obligations

---

[3] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments." Clerk's Papers (CP) at 53.

The trial court did not enter written findings of fact or conclusions of law for Kingsley's conviction. *State v. Kingsley*, No. 51748-5-II, slip op. at 2 (Wash. Ct. App. Feb. 11, 2020) (unpublished).[4] The trial court did, however, enter written findings of fact and conclusions of law as to the aggravating factor of abuse of a position of trust. *Id*. The trial court found that Kingsley was a family friend of E.P.'s parents for more than 10 years, often babysat their children, and stayed overnight in their home. *Id.* Because of this relationship, the victim's parents gave Kingsley full access to their home, including the room where Kingsley molested E.P. *Id.* The trial court concluded that Kingsley held a position of trust with E.P.'s parents and used that position of trust to facilitate the offense of first degree child molestation. *Id.*

D.    FIRST APPEAL

Kingsley appealed his conviction and sentence, arguing that there was insufficient evidence to show that he touched E.P. for the purposes of sexual gratification. Br. of Appellant 16-19, *State v. Kingsley*, No. 51748-5-II (Wash. Ct. App.). Kingsley also argued that the trial court erred by imposing an exceptional sentence upward based on his position of trust because he was not babysitting on the night that he touched E.P. Br. of Appellant 19-24, *State v. Kingsley*, No. 51748-5-II (Wash. Ct. App.). We vacated Kingsley's judgment and sentence and remanded to the trial court to enter written findings of fact and conclusions of law supporting the trial court's verdict and for resentencing. *Kingsley*, slip op. at 1, 3.

---

[4] https://www.courts.wa.gov/opinions/pdf/D2%2051748-5-II%20Unpublished%20Opinion.pdf.

E.      PROCEEDINGS ON REMAND

The trial court held a hearing on remand on July 16, 2020. At the hearing, the trial court stated that it had previously imposed several LFOs, including the $200 criminal filing fee, and asked if the parties had argument on those fees. Kingsley's attorney stated that he was not convinced that the fees were mandatory and "always ask[s] the court not to impose LFO[]s." 1 VRP (July 16, 2020) (Hearing on Remand) at 17. The trial court stated that it would keep the LFOs the same as they were.

The trial court then entered written findings of fact and conclusions of law, including the following:

1.  On or about the 24th–25th day of August, 2017, in Clallam County, State of Washington, the above named defendant was at least thirty-six (36) months older than [E.P.] who was less than twelve (12) years old and not married to the defendant.

2.  The defendant had sexual contact with [E.P.], with his hand making full-skin contact with [E.P.'s] vaginal area for the purpose of sexual gratification.

3.  [E.P.] was 8 years old, and testified to the above information.

4.  [E.P.] also made timely statements to her mother after the incident. [E.P.] was adamant that the incident had happened, and that the defendant's touch was sexual in nature.

5.  [E.P.] made similar statements to both her mother and her father about the incident.

6.  After making the statements to her parents, [E.P.] gave a statement to law enforcement that was consistent with her descriptions to her parents of having been touched in a sexual manner on her vaginal area by the defendant.

7.  When [E.P.]'s father confronted the defendant about the incident, the defendant, in a conversation with the father acknowledged that he had touched [E.P.] like she said and that he felt bad about it.

CP at 12-13.

The trial court entered a new judgment and sentence with the same 70 months of confinement, $200 criminal filing fee, and community custody supervision fee. The new judgment and sentence also included a provision stating that "[n]o interest shall accrue on non-restitution obligations imposed in this judgment." CP at 23-24.

In addition, the trial court ordered the following community custody conditions, which matched the original judgment and sentence:

8. You shall pay all costs of counseling to the victim(s) as required, as a result of your crime(s).

. . . .

10. You shall abstain from the possession or use of any controlled substances and drug paraphernalia except as prescribed by a medical professional, and shall provide copies of all prescriptions to Community Corrections Officer within seventy-two (72) hours.

. . . .

12. During term of community custody, you shall submit to physical and/or psychological testing whenever requested by Community Corrections Officer, at your own expense, to assure compliance with Judgment and Sentence or Department of Corrections' requirements.

. . . .

19. You shall not own/use/view/have in your possession any pornographic materials during the supervision period. This includes any electronic/computer/print/internet/cell phone generated images of pornography.

. . . .

22. You shall avoid all sections of the community that represents a "high-risk" setting and will avoid all child-oriented settings/places.

23. You shall not enter into any topless bars, peep shows, or frequent any prostitutes or areas known for prostitution or drug related activities during entire treatment period (to include entire period of supervision).

CP at 34-35.

After entering the new judgment and sentence, the trial court found Kingsley indigent for the purposes of appeal because he "lacks sufficient funds to prosecute an appeal."[5] CP at 6.

Kingsley appeals.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE ON SEXUAL GRATIFICATION

Kingsley argues that there is insufficient evidence to support his conviction for first degree child molestation because the State presented insufficient evidence to prove that he acted for the purpose of sexual gratification. We disagree.

1.    Legal Principles

a.    Standard of review

We review challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution and determining whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). "Specifically, following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id.* at 105–06. "'Substantial evidence' is evidence

---

[5] This language corresponds with an indigency finding under RCW 10.101.010(3)(d), which provides that a person is indigent if they are "[u]nable to pay the anticipated cost of counsel for the matter before the court because his or her available funds are insufficient to pay any amount for the retention of counsel."

sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106 (quoting *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005))

An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* at 201. Direct and circumstantial evidence are equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). And this court defers to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

b.       First degree child molestation

To convict Kingsley of first degree child molestation, the State had to prove that Kingsley had sexual contact with E.P., that E.P. was under 12 years old at the time, that Kingsley was at least 36 months older than E.P., and that Kingsley was not married to E.P. Former RCW 9A.44.083(1) (1994). Sexual contact is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13).[6] Sexual gratification is not an essential element of first degree child molestation, but it is a definitional term that clarifies the meaning of the essential element of sexual contact. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). "'Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification.'" *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624

---

[6] This subsection was renumbered from subsection (2) to subsection (13) in 2020. There were no substantive changes made affecting this appeal. Therefore, we cite to the current statute.

(2009) (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991), *review denied*, 118 Wn.2d 1013 (1992)).

      2.      Analysis

           a.      Findings of fact

Kingsley argues that there is insufficient evidence related to sexual contact and sexual gratification to support findings of fact 2 through 7.

Finding of fact 2 reads: "The defendant had sexual contact with [E.P.], with his hand making full-skin contact with [E.P.'s] vaginal area for the purpose of sexual gratification." CP at 12. At trial, E.P. testified that Kingsley rubbed her "private parts," then put his hand inside of her pants and "stuck it deep inside [her] girl part." 1 VRP (Jan. 23, 2018) (Trial) at 290. From this testimony, a fair-minded person would be convinced of the truth that Kingsley used his hand to make skin contact with E.P.'s vaginal area. And because E.P. described the nature of the touch as rubbing inside of her shorts and inside her "girl part," a fair-minded person would be convinced that Kingsley's touch was not for caretaking purposes, like checking for seizures or seeing if E.P. wet the bed. 1 VRP (Jan. 23, 2018) (Trial) at 290. Neither of those caretaking functions require rubbing a child's vaginal area, so the evidence supports an inference that the touch was for the purpose of sexual gratification. *See Harstad*, 153 Wn. App. at 21. Therefore, a fair-minded person could be persuaded from E.P.'s testimony that Kingsley touched E.P. for the purpose of sexual gratification.

Finding of fact 3 reads: "[E.P.] . . . testified to the above information." CP at 12. As discussed above, E.P. testified about Kingsley making full-skin contact with her vaginal area, though she did not use those words. And E.P. testified about Kingsley rubbing that same area,

which is inconsistent with caretaking and provides an inference that Kingsley acted for the purpose of sexual gratification. *See Harstad*, 153 Wn. App. at 21. Therefore, a fair-minded person could be persuaded that E.P. testified as to the information in finding of fact 2.

Finding of fact 4 reads: "[E.P.] was adamant . . . that the defendant's touch was sexual in nature." CP at 12. E.P.'s mother testified that E.P. talked to her about Kingsley's touching the morning after it happened. While E.P.'s mother did not testify that E.P. said the words "sexual in nature," she said E.P. told her the touch made E.P. feel uncomfortable, made E.P. tell Kingsley no, and made E.P. slap his hand. And when E.P.'s mother asked if E.P. knew what the accusations meant and if it was possible that Kingsley was checking if she wet the bed or "any other possibility," E.P. repeated that she slapped Kingsley's hand. 1 VRP (Jan. 23, 2018) (Trial) at 339. A fair-minded person could, therefore, be persuaded that E.P. was adamant the touch happened and could not be innocently explained. Because E.P. was only eight years old, and because all reasonable inferences must be drawn in favor of the State and interpreted most strongly against the defendant, a fair-minded person could also draw the reasonable inference and be persuaded that E.P. was adamant that Kingsley's touch was sexual in nature.

Finding of fact 5 reads: "[E.P.] made similar statements to both her mother and her father about the incident." CP at 12. E.P.'s mother testified that E.P. told her Kingsley had touched her over her clothes and inside her shorts. E.P.'s father testified that E.P. told him Kingsley rubbed the blanket near her private area or girl part, then put his hands up her shorts. From this testimony, a fair-minded person could be persuaded that E.P. made similar statements to her mother and father.

Finding of fact 6 reads: "After making the statements to her parents, [E.P.] gave a statement to law enforcement that was consistent with her descriptions to her parents of having been touched in a sexual manner on her vaginal area by the defendant." CP at 13. The transcript of E.P.'s interview with Detective Smith shows that E.P. said Kingsley put his hands in her shorts, touched her private parts, and rubbed her underneath all her clothes. From this interview transcript, a fair-minded person could be persuaded that E.P. gave a statement to law enforcement that was consistent with the descriptions that she had previously given to her parents about Kingsley touching her in a sexual manner on her vaginal area.

Finding of fact 7 reads: "When [E.P.]'s father confronted the defendant about the incident, the defendant, in a conversation with the father acknowledged that he had touched [E.P.] like she said and that he felt bad about it." CP at 13. The recording of this conversation was admitted at trial, and Kingsley stated in the recording that he touched E.P. "[p]robably in the way that she described" and said he "felt bad about it." 1 VRP (Jan. 22, 2018) (Trial) at 254. From this recording, a fair-minded person could be persuaded that, during the confrontation with E.P.'s father, Kingsley acknowledged he had touched E.P. like she said and that he felt bad about it.

Because the evidence presented at trial was sufficient to persuade a fair-minded person of the truth of each of the findings of fact above, these findings are supported by substantial evidence. *See Homan*, 181 Wn.2d at 106. Thus, contrary to Kingsley's assertion, there is sufficient evidence in the record related to sexual contact and sexual gratification to support findings of fact 2 through 7.

b.      Conclusion of law

The trial court's conclusion of law states that Kingsley "is guilty, beyond a reasonable doubt, of the charge of Child Molestation in the First Degree, RCW 9A.44.083 and all elements of the charge having been proven at trial." CP at 13. Kingsley argues that the State did not prove he had sexual contact with E.P.[7]

Finding of fact 2 establishes that Kingsley "had sexual contact with E.P." and thus supports the trial court's conclusion of law. CP at 12. And as discussed above, this finding of fact was supported by substantial evidence. Therefore, we hold that Kingsley's insufficiency of evidence argument fails. *See Homan*, 181 Wn.2d at 105–06.

B.      IMPERMISSIBLE TAILORING

Kingsley argues that the trial court erred by submitting late findings of fact that were impermissibly tailored to address issues he raised on appeal. Specifically, he argues that the findings of fact were impermissibly tailored to state that Kingsley's touching was sexual in nature. We disagree.

Written findings and conclusions are required to ensure efficient and accurate appellate review. *State v. Cannon*, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). "Although the practice of submitting late findings and conclusions is disfavored, they may be 'submitted and entered even while an appeal is pending' if the defendant is not prejudiced by the belated entry of findings." *Id.* (quoting *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984)). The defendant can show prejudice by establishing that the belated findings were tailored

---

[7] Kingsley does not contest the other elements of the crime.

to address issues raised in the appellant's opening brief. *State v. Pruitt*, 145 Wn. App. 784, 794, 187 P.3d 326 (2008). "[I]nadequate written findings may be supplemented by the trial court's oral decision or statements in the record." *State v. Teuber*, 109 Wn. App. 640, 646, 36 P.3d 1089 (2001), *review denied*, 146 Wn.2d 1021 (2002).

As discussed above, the State produced sufficient evidence to support the trial court's findings and for the trial court to find that Kingsley's touch was sexual in nature. Further, the trial court said in its oral ruling at the time of trial that

> [E.P.'s] mom looked for even, tried to convince her, well, couldn't it have been something else, could it have been touching in some other way, was this some sort of innocent thing? [E.P.] was adamant it was not innocent touching.

1 VRP (Jan. 23, 2018) (Trial) at 416. The trial court stated that E.P. disclosed the incident because "she knew it was wrong." 1 VRP (Jan. 23, 2018) (Trial) at 416. Both of these statements show that the trial court orally found at the end of the trial that Kingsley's touching was sexual in nature, since the touching was not innocent and E.P. knew it was wrong. The trial court's belated written findings properly conveyed the trial court's conclusion at the time of trial. Because there was sufficient evidence to prove sexual contact and because the trial court's later written findings properly conveyed the trial court's findings at the time of trial, the written findings were not impermissibly tailored to address issues raised in Kingsley's appellate brief. Therefore, Kingsley was not prejudiced by the entry of the belated written findings. *See Pruitt*, 145 Wn. App. at 794. Accordingly, we will not disturb the trial court's written findings on appeal.

C.     EXCEPTIONAL SENTENCE

Kingsley argues that the trial court erred by imposing an exceptional sentence without finding there was a substantial and compelling justification. We disagree.

Sentences generally must fall within the standard sentence range established by the Sentencing Reform Act of 1981. RCW 9.94A.505(2)(a)(i).[8] A trial court may impose a sentence outside the standard range for an offense if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535.[9] An aggravated exceptional sentence is appropriate when certain aggravating factors have been determined. RCW 9.94A.535(2), (3). Using a position of trust to facilitate the commission of the crime is an aggravating factor justifying an exceptional sentence. RCW 9.94A.535(3)(n).

We review the reasons the trial court used to justify an exceptional sentence de novo. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). A sentencing court is not required to use the precise phrase "substantial and compelling" in its findings of fact and conclusions of law. *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011).

Here, the trial court stated in its written findings of fact and conclusions of law on the aggravating factor that Kingsley used his position of trust within E.P.'s family to facilitate the commission of his crime of first degree child molestation. Kingsley argues that the trial court's findings of fact and conclusions of law are insufficient to support the exceptional sentence because the trial court did not write that there were substantial and compelling reasons to impose an exceptional sentence. But the trial court stated in its original oral ruling that it would set Kingsley's actual sentence as 70 months, "just a little bit over the standard range" of 68 months, based on the

---

[8] RCW 9.94A.505 was amended in 2019 and 2021. However, there were no substantive changes made affecting this appeal. Therefore, we cite to the current statute.

[9] RCW 9.94A.535 was amended in 2019. However, there were no substantive changes made affecting this appeal. Therefore, we cite to the current statute.

aggravating factor of using a position of trust to facilitate his crime. 1 VRP (Mar. 29, 2018) (Sentencing Hearing) at 448. The trial court then made written findings that Kingsley used his position of trust to facilitate his crime and incorporated those written findings in the original judgment and sentence. And on remand, the trial court imposed the same sentence, relying on the same findings of fact and conclusions of law on the aggravating factor and incorporating those findings and conclusions into the new judgment and sentence.

For all the reasons above, it is clear that Kingsley's use of a position of trust to facilitate the crime was the trial court's reason for the exceptional sentence. This was an acceptable reason to impose an exceptional sentence. *See* RCW 9.94A.353(3)(n). Because it is clear that the sentencing court imposed the exceptional sentence for a permissible reason and incorporated its written findings regarding that reason into the judgment and sentence, we hold that the trial court did not err by imposing the exceptional sentence without using the words "substantial and compelling." *See* RCW 9.94A.535(3)(n); *Mutch*, 171 Wn.2d at 661.

D.      COMMUNITY CUSTODY CONDITIONS

Kingsley argues that the trial court erred by imposing several community custody conditions that are unauthorized, unconstitutionally vague, or impermissibly overbroad.

1.      Legal Principles

We review whether the trial court had statutory authority to impose a community custody condition de novo. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014). "Any condition imposed in excess of [the court's] statutory grant of power is void." *Id*. If the trial court had statutory authority, we review the trial court's decision to impose the condition for an abuse of

discretion. *Id.* at 326. We will reverse such conditions only if they are manifestly unreasonable. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

Courts are statutorily authorized to order offenders to comply with crime-related prohibitions. RCW 9.94A.703(3)(f). A crime-related prohibition is one that is related to the circumstances of the crime for which the offender is being sentenced. RCW 9.94A.030(10).[10] "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 684, 425 P.3d 847 (2018) (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)).

To survive a constitutional vagueness challenge, conditions must give ordinary people sufficient notice to understand what conduct is proscribed. *Irwin*, 191 Wn. App. at 655. Conditions that are unconstitutional are manifestly unreasonable. *Valencia*, 169 Wn.2d at 792.

2.      Restitution Costs For Victim's Counseling (Condition 8)

Kingsley argues that the trial court erred by ordering him to pay the costs of his victim's counseling because the condition is broader than the court's restitution authority. The State concedes that the trial court erred in imposing this condition and argues that this court should strike it. We accept the State's concession.

A sentencing court can order restitution costs for counseling reasonably related to the offense. RCW 9.94A.753(3). When restitution is ordered, the court must determine the amount of restitution due at the sentencing hearing or within 180 days of sentencing. RCW 9.94A.753(1). If imposing restitution costs, the court should take into consideration the total amount of restitution

---

[10] RCW 9.94A.030 was amended in 2021. However, there were no substantive changes made affecting this appeal. Therefore, we cite to the current statute.

owed, the offender's ability to pay, and the offender's assets. RCW 9.94A.753(1). Restitution must be based on easily ascertainable damages, such as actual expenses incurred for treatment. RCW 9.94A.753(3). While a sentencing court can impose community custody conditions as authorized under RCW 9.94A.703, that statute does not include any authorization for a trial court to order an offender to pay restitution.

Here, the trial court ordered Kingsley, as a condition of community custody, to "pay all costs of counseling to the victim(s) as required, as a result of [his] crime(s)." CP at 34. This condition was not imposed within the trial court's restitution authority as the court did not determine the amount of restitution due, take into consideration Kingsley's assets or ability to pay, or base the condition on easily ascertainable damages. And the trial court was not authorized under RCW 9.94A.703 to order Kingsley to pay restitution as a community custody condition. Therefore, the trial court erred by imposing the condition, and we remand for the trial court to strike this condition.

3.      Prohibition On Possession Of Drug Paraphernalia (Condition 10)

Kingsley argues that the trial court erred by prohibiting him from possessing drug paraphernalia because the condition is overbroad and not crime-related. The State concedes that the trial court erred by prohibiting Kingsley from possessing drug paraphernalia because it is not crime-related. We accept the State's concession.

Here, the trial court ordered Kingsley to abstain from "the possession or use of any controlled substances and drug paraphernalia except as prescribed by a medical professional." CP at 34. The prohibition on possessing or using controlled substances is authorized, and Kingsley does not contest this part of the condition. *See* RCW 9.94A.703(2). But the prohibition on

possessing or using drug paraphernalia is not sufficiently crime-related, as nothing in the record suggests that that drug paraphernalia had anything to do with Kingsley's crime of conviction. Accordingly, we remand for the trial court to strike the part of the condition prohibiting the possession or use of drug paraphernalia.

4.      Physical And Psychological Testing (Condition 12)

Kingsley argues that the trial court erred by ordering that he submit to physical and psychological testing whenever requested by his community corrections officer. The State concedes that the condition is overbroad and has the potential for arbitrary enforcement. We accept the State's concession.

A court cannot impose a community custody condition ordering a person to submit to invasive physical tests at the discretion of a community corrections officer because it violates the person's constitutional right to be free from bodily intrusions. *State v. Land*, 172 Wn. App. 593, 605, 295 P.3d 782, *review denied*, 177 Wn.2d 1016 (2013). Only qualified providers can order this kind of testing. *Id.*. The proper remedy for an unconstitutional condition requiring invasive physical tests at the discretion of a community corrections officer is to remand for the trial court to strike the condition. *See id.* at 605-06.

Here, the trial court ordered Kingsley to "submit to physical and/or psychological testing whenever requested by Community Corrections Officer, at your own expense, to assure compliance with Judgment and Sentence or Department of Corrections' requirements." CP at 35. This condition gives the community corrections officer the discretion to order Kingsley to submit to any kind of physical or psychological testing, including invasive physical testing, which violates

Kingsley's constitutional right to be free from bodily intrusions. Accordingly, we remand for the trial court to strike this condition.

     5.     Prohibition On Accessing "Any Pornographic Materials" (Condition 19)

Kingsley argues that the prohibition on accessing "'any pornographic materials'" is unconstitutionally vague and should be stricken. Br. of Appellant at 28. The State concedes that prohibiting the use or possession of pornographic material is unconstitutionally vague but asks us to remand the case for the trial court to adopt a clear definition upon resentencing. We accept the State's concession.

Conditions prohibiting access to "pornographic materials" without specific definitions of what materials are prohibited are unconstitutionally vague. *See State v. Bahl*, 164 Wn.2d 739, 758, 193 P.3d 678 (2008). The proper remedy for unconstitutionally vague conditions prohibiting access to pornographic materials is to remand to the trial court to determine whether the condition is narrowly tailored to the conviction. *See State v. Padilla*, 190 Wn.2d 672, 684, 416 P.3d 712 (2018).

Here, the trial court imposed a condition stating that Kingsley must "not own/use/view/have in [his] possession any pornographic materials during the supervision period. This includes any electronic/computer/print/internet/cell phone generated images of pornography." CP at 35. The trial court did not provide a clear definition for "pornographic materials." Therefore, the condition is unconstitutionally vague. Accordingly, we remand for the trial court to reconsider whether a condition that is narrowly tailored to Kingsley's conviction can be imposed.

6.    Prohibition On Travel To "High-Risk" Areas And "All Child-Oriented Settings/Places" (Condition 22)

Kingsley argues that the prohibition on traveling to any "'high-risk'" areas and "'all child-oriented settings/places'" is unconstitutionally vague. Br. of Appellant at 29. The State concedes that the condition is unconstitutionally vague. We accept the State's concession.

Prohibitions on traveling to where "'children are known to congregate'" are unconstitutionally vague. *Irwin*, 191 Wn. App. at 655. This kind of condition needs at least a nonexclusive list of places where children congregate to satisfy due process. *State v. Wallmuller*, 194 Wn.2d 234, 245, 449 P.3d 619 (2019).

Here, the trial court ordered Kingsley to "avoid all sections of the community that represent[] a 'high-risk' setting" and to "avoid all child-oriented settings/places." CP at 35. The trial court did not provide any specific description of what a child-oriented setting/place is, nor did it provide a nonexclusive list of places that would qualify as child-oriented settings/places. Without further descriptions or guidance, an ordinary person would not understand what conduct is proscribed. Therefore, the condition is unconstitutionally vague. Accordingly, we remand for the trial court to strike this condition.

7.    Prohibition On Travel To Areas Known For Prostitution Or Drug Related Activities (Condition 23)

Kingsley argues that the trial court erred by prohibiting him from traveling to areas known for prostitution or drug related activities because the condition is overbroad and not crime-related. The State concedes that the trial court erred by prohibiting travel to areas known for drug activity because it is not crime-related but argues that the other parts of the condition prohibiting travel to

topless bars, peep shows, prostitutes, and areas known for prostitution are sufficiently crime-related. We agree with the State.

Here, the trial court prohibited Kingsley from traveling to "areas known for . . . drug related activities." CP at 35. But nothing in the record suggests that drugs had anything to do with Kingsley's crime of conviction, first degree child molestation. Therefore, the part of the condition prohibiting travel to areas known for drug related activities is not sufficiently crime-related and must be stricken on remand.

However, the remainder of the condition prohibits Kingsley from traveling to topless bars, peep shows, prostitutes, and areas known for prostitution. Because Kingsley's crime of conviction showed an inability to control sexual urges, and these locations prompt sexual responses, there is "some basis for the connection" between Kingsley's crime and the condition imposed. *See Nguyen*, 191 Wn.2d at 686-87 (holding that condition prohibiting access to sex-related businesses was sufficiently related to sex crime against minor due to defendant's "inability to control . . . sexual urges"). Therefore, the remainder of the condition prohibiting Kingsley from traveling to topless bars, peep shows, prostitutes, and areas known for prostitution is sufficiently crime related and will not be disturbed on appeal. *See id.* at 684. Accordingly, we uphold the remainder of the condition.

E.    LEGAL FINANCIAL OBLIGATIONS

Kingsley argues that the trial court erred by imposing a criminal filing fee, interest on non-restitution LFOs, and a community custody supervision fee. We hold that the trial court erred by imposing the criminal filing fee and community custody supervision fee, but the trial court did not

err by imposing interest on non-restitution LFOs because the record shows the trial court did not impose that interest.

### 1. Criminal Filing Fee

Kingsley argues that the trial court erred in imposing a criminal filing fee.

Courts cannot impose discretionary costs, including criminal filing fees, on defendants who are found indigent under RCW 10.101.010(3)(a) through (c). RCW 36.18.020(2)(h);[11] *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018). Here, the State concedes that Kingsley is indigent under RCW 10.01.160(3)(c). We accept the State's concession and remand for the trial court to strike the criminal filing fee.

### 2. Interest On Non-Restitution LFOs

Kingsley argues that the trial court erred by imposing interest on non-restitution LFOs.

Sentencing courts cannot impose interest accrual on the non-restitution portions of LFOs. RCW 10.82.090(1); *Ramirez*, 191 Wn.2d at 746-47. Kingsley's judgment and sentence properly states that "[n]o interest shall accrue on non-restitution obligations imposed in this judgment." CP at 23-24. Therefore, the trial court did not impose interest on non-restitution LFOs, and Kingsley's challenge fails.

### 3. Community Custody Supervision Fee

Kingsley argues that the community custody supervision fee must be stricken.

RCW 10.01.160(3) states, "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)."

---

[11] RCW 36.18.020 was amended in 2021. However, there were no substantive changes made affecting this appeal. Therefore, we cite to the current statute.

RCW 10.01.160(2) defines "costs" as expenses that are incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. The community custody supervision fee that Kingsley challenges is not a "cost" covered by RCW 10.01.160(3).

However, under RCW 9.94A.703(2)(d), trial courts may waive the community custody supervision fee. Thus, community custody supervision fees are discretionary LFOs because they are waivable by the court. *State v. Bowman*, 198 Wn.2d 609, 629, 498 P.3d 478 (2021).

Here, the trial court explicitly stated at the original sentencing hearing that it would not go through a *Blazina* analysis because it was only imposing mandatory LFOs. And on remand, the trial court simply re-imposed the same legal financial obligations as in the original sentence and did not mention the community custody supervision fee as a fee it meant to impose. Therefore, because the record is clear that the trial court intended to waive the discretionary community custody supervision fee, we remand to the trial court to strike the community custody supervision fee. *See id.* at 629.

F.     STATEMENT OF ADDITIONAL GROUNDS

       1.     Coercion Of Incriminating Statements

Kingsley claims that the "informant," presumably E.P.'s father, pressed him aggressively to induce incriminating statements instead of listening and reporting. SAG at 2.[12] We decline to address this claim.

---

[12] We note that the SAG contains no page numbers. For the purposes of our appeal, we number the pages of the SAG 1-2 starting with the first page of the SAG.

We "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). However, a party may raise a claim involving a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3).

Here, the State introduced the recording of a conversation between Kingsley and E.P.'s father as an exhibit. The trial court asked if there were any objections, and Kingsley's counsel said no. Kingsley did not raise the issue at trial and does not argue on appeal that the admission of the audio constituted a manifest error affecting a constitutional right. Therefore, we decline to address the issue.

2.      Improper Witness Preparation

Kingsley claims that E.P. and her father practiced what to testify, which came to light during pretrial hearings.

In a SAG, "[r]eference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Kingsley does not provide any authority that witnesses are prohibited from practicing their testimony before trial nor are we aware of any rule or case law prohibiting witnesses from practicing their testimony before trial. Therefore, Kingsley fails to inform us of the nature and occurrence of an alleged error.

Also, to the extent Kingsley is asking us to review E.P.'s credibility, credibility determinations cannot be reviewed on appeal. *State v. Bass*, 18 Wn. App. 2d 760, 780, 491 P.3d 988 (2021), *review denied*, 198 Wn.2d 1034 (2022). Therefore, we do not address Kingsley's claim.

3.    Prosecutorial Misconduct: Improper Witness Preparation

Kingsley claims that the prosecutor committed misconduct because he was aware that E.P. and her father rehearsed trial testimony and "failed to do anything about it." SAG at 2. We disagree.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). It is improper for an attorney, including a prosecutor, to "coach" or urge a witness to create testimony. *State v. McCreven*, 170 Wn. App. 444, 475, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013); *see also* RPC 3.4(b) ("A lawyer shall not . . . counsel or assist a witness to testify falsely.").

Prejudice is determined under one of two standards of review. *Emery*, 174 Wn.2d at 760. If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Id*. When the defendant fails to object to a prosecutor's improper conduct, the error is waived unless "the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). Our review focuses "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

Here, Kingsley does not claim that the prosecutor coached or urged E.P. to create testimony or testify falsely. Kingsley simply alleges that the prosecutor knew E.P. and her father practiced E.P.'s testimony before trial. Further, the record shows that E.P. practiced her testimony with her father so she would not be scared and so she would not be afraid of getting in trouble for saying certain words like "girl part" in court. 1 VRP (Jan. 17, 2018) (Pre-Trial Hearing) at 120. E.P. testified at trial that her father did not tell her what to say. Thus, Kingsley fails to show how E.P.'s preparation with her father was improper, nor has he shown how the prosecutor's conduct in "fail[ing] to do anything about it" was improper. SAG at 2.

Moreover, even assuming the prosecutor's failure to stop E.P. from practicing her testimony before trial was improper, Kingsley fails to make the required showing of prejudice. While Kingsley states that his counsel objected, the record belies this contention. Therefore, Kingsley has waived any alleged error unless he can show that "the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. Kingsley makes no attempt to meet this heightened standard. Thus, Kingsley's claim fails.

4.      Prosecutorial Misconduct: Vouching

Kingsley claims that the prosecutor committed misconduct by vouching for E.P.'s credibility. We decline to consider Kingsley's claim because he does not inform this court of the nature and occurrence of the alleged error as required by RAP 10.10(c).

Kingsley contends that "the prosecutor became a witness for purposes of trial when she personally vouched for the alleged victim's statements." SAG at 2. But Kingsley does not point to any specific occurrence, describe how the prosecutor allegedly vouched for E.P.'s statements,

or even explain which statements he is referring to. "[T]he appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." RAP 10.10(c). Because Kingsley has not informed us of the nature and occurrence of the alleged error, we do not consider Kingsley's claim.

CONCLUSION

We hold that (1) there is sufficient evidence to sustain Kingsley's conviction, (2) the trial court did not enter findings of fact that were impermissibly tailored to fix issues raised on appeal, (3) the trial court did not err by imposing an exceptional sentence, (4) the trial court erred by imposing several community custody conditions that were unauthorized or unconstitutional, (5) the trial court erred by imposing a criminal filing fee, (6) the trial court did not err by imposing interest on non-restitution LFOs, and (7) the trial court erred in imposing the community custody supervision fee because the record is clear that the trial court waived that fee. As to Kingsley's SAG, we hold that the prosecutor did not commit misconduct by knowing that E.P. and her father rehearsed trial testimony, and we decline to address Kingsley's claims that an informant improperly coerced his incriminating statement, witnesses improperly rehearsed trial testimony, and the prosecutor vouched for E.P.'s credibility.

Accordingly, we affirm Kingsley's conviction. And we affirm in part, reverse in part, and remand for the trial court to address the following community custody conditions consistent with this opinion: restitution costs for victim's counseling (Condition 8), prohibition of drug paraphernalia (Condition 10), physical and psychological testing (Condition 12), prohibition on accessing "any pornographic materials" (Condition 19), prohibition on travel to "high-risk" areas and "all child-oriented settings/places" (Condition 22), and prohibition on travel to areas known

for prostitution or drug related activities (Condition 23). We reject Kingsley's argument that the trial court erred by imposing interest on non-restitution LFOs, but we reverse and remand for the trial court to strike the criminal filing fee and community custody supervision fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Veljacic, J.

_____
Ashcraft, J.P.T.[13]

---

[13] Judge Ashcraft is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.